## WALLER & SMITH vs. HENRY VON PHUL.

1. A title to lands by a *bona fide* purchase and entry from the United States, must prevail over a confirmation by the act of congress of July 4th, 1836, of a location and survey made subsequent to the entry.

2. A *bona fide* entry from the United States will, in this State, defend as well as maintain an action of ejectment.

3. Whether an entry from the United States was procured by fraudulent means or not, in a contest between two claimants from the United States, is a question of fact to be submitted to a jury.

## ERROR to Ralls Circuit Court.

CARTY WELLS, for plaintiffs in error.

1st. The entry of Matson is a better title than the confirmation of Saugrain, because said entry is protected by the second sec. of the act of the 4th of July, 1836, and consequently the court ought to have given the second instruction prayed for by the defendants below.

2nd. Because there was no evidence in the cause to show that the land in dispute was within Saugrain's grant of confirmation.

3rd. There was no evidence that Saugrain's claim was ever located or surveyed under the Spanish government, or the government of the United States, prior to Matson's entry, and if not located or surveyed, it could not be reserved from sale.

4th. It appears from the minutes of the board of commissioners to which the claim of Saugrain was presented in 1806, that surveys were presented to that board; one for 4006 arpents on the Missouri, and one for 300 arpents on the Mississippi. The tabular statement shows that surveys had been made—one for 7000 arpents, and two for 3000 each; this would make only 13,000.

The plat of survey offered in evidence does not correspond either in quantity or location with any of the above surveys,

The grant gives the land as prayed for, and the petition prays for 20,000 arpents—4,000 to be taken four miles S. W. of the river Mississippi; 57 miles from St. Louis—10,000 to be taken in a vacant place at the petitioner's choice, and the remainder in two tracts of 3,000 each. These have no correspondence with the surveys mentioned in the minutes of the board, nor do either of them correspond with the plat offered in evidence. The land in controversy is more than 100 miles from St. Louis. The plat given in evidence does not purport to be a copy of a Spanish survey.

There is no proof in the record that any part of Saugrain's grant was ever located in Ralls county, or in fact, that it was ever located until after Matson's entry.

As to the plaintiff's claim to recover, on the ground that defendants were their tenants, the defendants say :

1st. The letters from Matson to Von Phul show that there was an agreement of some sort between them, in relation to land of Von Phul's, but not of Saugrain's.

There is no evidence that the land mentioned in the letters was land claimed by Saugrain.

There is no evidence that the land mentioned in the letters was the land now in controversy, or that Richard Matson was ever in possession of it, or of any land after 1825.

There is no evidence that the administrators of Matson derived their possession from Matson, or that they had any authority to lease the land.

GLOVER, CAMPBELL & ANDERSON, for defendants in error.

1st. The confirmation to Saugrain by act of July 4th, 1836, was the better title, as has been repeatedly decided by the supreme court of the United States. The whole of the surveys are set down in the tabular statement and must have been before the board of commissioners, though the statement in the minutes is not so full as the tabular statement.

2nd. The plaintiffs showed the only legal title before the court which ever emanated from the United States.

The confirmation, if not as meritorious in equity as the entry was still a legal title, and rightly prevailed over the entry, no matter when it was surveyed.

3rd. The defendant, Matson and all persons claiming under him, being in by a lease from the plaintiffs, was estopped to deny them title.

4th. The entry of the defendant was fraud of the plaintiff's rights.

That fraud clothed him and his assignees with a trust for the plaintiff's, and he and they were barred against sitting any adverse rights against the plaintiffs.

NAPTON, J., delivered the opinion of the court.

This is an action of ejectment to recover a tract of land in Ralls county.

The plaintiffs, Von Phul and others, heirs of A. Saugrain, relied upon a confirmation by the act of congress of July 4, 1836, of a claim by their ancestor in 1797, to 20,000 arpents of land.

In 1806 their claim was presented to the old board of commissioners, accompanied with two surveys, one of 4006 arpents, certified in 1804; and the other of 3000 arpents, dated January 7, and certified February 15, 1804. In 1810 the claim was rejected. In 1833, the new board took up this claim, and three plats of survey were produced, one for 7000 arpents and the two others for 3000 arpents each. These surveys, as the minutes state, were proved to have been made in 1806 by Freemon Delauriere, the deputy surveyor. They were recommended for confirmation.

The plaintiff then produced a series of letters containing a correspondence between Richard Matson, under whom the defendants held, and H. Von Phul, one of the heirs of Saugrain and the authorized agent of the others, extending through a series of years from 1820 to 1824 or 5. The object of this testimony was to show that Matson got possession of the land as the tenant of Von Phul, and during this tenancy entered the land at the land office.

The testimony of some witnesses was also given on this point, and a caveat entered at the general land office by Von Phul against the issuance of a patent, was also read.

The plaintiffs produced a survey dated January 17, 1839. The defendant introduced Mr. Carson, who had been register of the land office

in 1827, and he testified that in that year Matson presented to him a certificate of pre-emption in favor of James Foreman, signed by McNair and Hammond, register and receiver at St. Louis, of which certificate he (Matson) was legal assignee. The subject was laid before the commissioner of the general land office, who directed the witness, that if he was satisfied that Foreman's settlement was made prior to the survey of Saugrain's claim, the entry might be made.

Shortly after this, Matson presented a certificate of Theodore Hunt, recorder of land titles at St. Louis, stating that Saugrain's claim never had been surveyed or located, and the entry was accordingly permitted. The patent was withheld, however, in consequence of Von Phul's caveat.

The defendants asked two instructions of the court, the first of which was given, and the other refused.

1. Unless it shall appear from the evidence, that the land in dispute was located or surveyed by Saugrain before Matson's entries, there should be a verdict for defendants.

. 2. The entry of Matson in 1827, if true and genuine, is a better title than the confirmation by the act of July 4, 1836, to Saugrain. ·

The plaintiffs had a verdict and judgment, and the case is brought here by writ of error.

The instruction given by the court was undoubtedly correct. Unless the claim of Saugrain was located upon some specific tract, the act of 1811 did not protect it. There seems to have been some uncertainty in this case in relation to the period of the locations under Saugrain's claim, as well as the quantity contained in the surveys. The surveys reported to the old board do not appear to correspond, either in time or quantity, with those produced before the late board, and proved at the trial. This was, however, for the jury, and they have found the location to have been prior to the entry.

The rights of the parties do not, however, depend upon this question alone. The validity of the entry was not submitted to the jury, doubtless for the reason that an entry of land at the U. S. land offices was deemed utterly inoperative when conflicting with a subsequent confirmation under the act of 1836, provided the land was such as fell within the purview of the reserving clause in the act of 1811. The circuit court was probably of opinion that *rules* made by the officers of the federal government, stood upon the same footing with *locations* under the New Madrid act of 1815. This however is an error, as the decision of the supreme court of the U. S., in Maxwell and others vs. Massey, (December term, 1849,) abundantly shows. In that case the

question is distinctly put and decided : "But there is another ground of defence, that would have been conclusive, even had Cerre's claim been surveyed, and the survey filed with the recorder in 1806, accompanying the notice of claim. By the second section of the confirming act of July 4, 1836, it is provided that if it shall be found, that any tract confirmed by this act, or any part thereof, had been surveyed and sold by the United States, this act shall confer no title to such lands in opposition to the rights acquired by such location or purchase; and the party whose claim is confirmed by this act, shall be authorized to enter a quantity of land equal to the interference elsewhere. Having seen that the United States might confirm the claim of Cerre, or might refuse to do so; and that it took date as a title recognized in the judicial tribunals from the confirming act, it follows, that the claim might be confirmed in such parts, and on such conditions as congress saw proper to prescribe, and having refused to confirm it for lands lying within its boundaries which had been previously sold, and the patents to Massey and Jones being of this description, they are the only legal title to the land; and therefore the charge of the circuit court was proper."

It is true that the foregoing observations of Judge Catron may be called an obiter dictum, for as much as the want of a specific location of Cerre's claim had already settled the case, but I am satisfied that the opinion was duly considered and deliberately advanced. The point was fairly presented by the record, and doubtless fully discussed at the bar, and its decision was very necessary to quiet a great number of honest and *bona fide* titles in Missouri. The decision, I need hardly add, is in conformity with the views of this court repeatedly advanced in previous cases, and in my humble judgment is in conformity with the spirit and letter of the act of 1836. If it be thought, that the opinion cannot be reconciled with the previous cases of Stoddard vs. Chambers, and Bissell vs. Penrose, I have only to say, that the opinion in Maxwell and others vs. Massey was advanced in full view of those cases, and doubtless upon a clear conviction that there was nothing irreconcilable in them. It is not incumbent upon me to present the reasons upon which this distinction has been founded. It is sufficient that the distinction has been made under circumstances clearly indicating the fixed determination of the court.

It is scarcely necessary to add that there is no distinction between a sale by entry and by patent, so far as this question is concerned. Both are legal titles under our laws, though differing in dignity. An entry will maintain an ejectment in this State; and of course will defend one. If the entry and the patent conflict, a different question is presented,

but a *bona fide* entry will no more be avoided by a confirmation under the act of 1836, than a *bona fide* patent.

As Judge Catron observes in Maxwell and others vs. Massey, congress might confirm the claim in whole or part, and on such conditions as to them seemed right, and they did not confirm it for lands lying within its boundaries which had been previously sold. The claim *quoad* the land sold or entered stood exactly as it did before the confirmation.

The main question in this case then, is, whether Matson's entry was fraudulent or not, and this question was never submitted to the jury. The act of 1836 was not designed to protect fraudulent entries. If Matson imposed upon the land officers with an abandoned and forfeited pre-emption or settlement right, whilst he was a tenant of the claimant, his entry ought not to avail him against the claimant either in law or equity. There was much evidence on this point, and it was a proper case for the jury.

Judgment reversed and cause remanded.