# CASES DETERMINED

BY THE

## ST. LOUIS AND THE KANSAS CITY

# COURTS OF APPEALS

AT THE

### OCTOBER TERM, 1903.

---

## CITY OF TROY, Respondent, v. HARRIS, Appellant.

### St. Louis Court of Appeals, October 6, 1903.

1. **Municipal Corporations: MERCHANT DEFINED.** A corporation having stationary tanks within the corporate limits of a city, and wagon tank-drivers about the city, from which tanks oil is sold, is a merchant, within an ordinance defining a merchant to be a person selling goods, wares and merchandise at any stand or place occupied for that·purpose.

2. ———: **AD VALOREM TAX.** An ordinance which provides that all merchants shall pay an ad valorem tax on the highest amount of merchandise carried between fixed dates in each year, and requiring a statement to be filed at certain times, showing such highest amount of goods carried, and a payment thereof to the city marshal, is in effect an ordinance imposing an ad valorem property tax on the goods of the merchants.

3. ———: **LICENSE FOR REGULATION OR REVENUE.** A license, either for regulation or revenue, may be exacted by a municipality as a prerequisite to the pursuit of a business in its borders, when the statutes so prescribe.

4. ———: **MAY COLLECT BOTH A LICENSE AND AN AD VALOREM TAX.** A city may collect from merchants, under appropriate statutory authority, both a license charge and an ad valorem tax on their stocks within the taxing limits fixed by the Constitution.

(51)

5. ———: NON-PAYMENT OF LICENSE TAX: LIABILITY OF AGENT. In the absence of any ordinance expressly binding the agent or clerk for the payment of an ad valorem tax on the wares of his employer, such agent or clerk is not liable to prosecution for the non-payment of such tax, under an ordinance providing that all merchants shall pay an ad valorem tax on the highest amount of goods carried between specified dates, and fixing a penalty for non-payment of such tax.

Appeal from Lincoln Circuit Court.—*Hon. E. M. Hughes,* Judge.

REVERSED AND REMANDED.

*Ball & Sparrow* for appellant.

(1)   The case at bar is one to enforce a penalty. In construing an ordinance, in a case of this kind, its meaning should not be expanded so as to subject anyone to a penal liability not fairly and reasonably within its language, St. Charles v. Hackman, 133 Mo. 634; City of Joplin v. Leckie, 78 Mo. App. 8.   (2) A municipal corporation is powerless to extend or widen the scope of its powers under an ordinance, so as to bring within its provisions persons other than those intended by the legislative body of said municipal corporation in enacting the ordinance.   Kansas City v. Lorber, 64 Mo. App. 605. Any reasonable doubt concerning the existence of this power must be resolved against its existence. Knapp v. Kansas City, 48 Mo. App. 485; 1 Diel., Mun. Corp., sec. 89.   (3) If the defendant was charged with having committed a crime; if the violation of the city ordinance was a crime, then the corporation as the principal and employer of defendant would not be liable, because in the commission of crime there can be no agency, but that is not the case here.   Defendant is only charged with having violated a city ordinance. This proceeding against him for the alleged violation is entirely civil in its nature and not criminal.   City of

De Soto v. Brown, 44 Mo. App. 148; Ex parte Holl-wedell, 74 Mo. 395; State v. Gustin, 152 Mo. 113.

*Stuart L. Penn* for respondent.

(1) A merchant is said to be one who traffics or carries on trade. He is a trafficker as well as a trader. To traffic is to pass goods and commodities from one person to another for an equivalent in goods or money. City of Kansas v. Vindquest, 36 Mo. App. 584; Kansas City v. Lorber, 64 Mo. App. 605. (2) The evidence showed that defendant was in control of a stand, store or place of business in the city of Troy, viz., the storage tanks in which the oil was kept, and the fact that he sold on orders or from his wagon wherever he could find a purchaser, does not render him any the less a merchant. (3) It became the duty of the company to take out the license required by the ordinance, in order to protect its employees from the penalty imposed by the violation thereof, and the defendant having been guilty of such violation by selling the Standard Oil Company's "goods, wares and merchandise," he was properly fined. City of Springfield v. Smith, 138 Mo. 645.

STATEMENT.

Defendant was prosecuted before the mayor of the city of Troy for unlawfully dealing in and selling goods, wares and merchandise within the corporate limits of said city in violation of an ordinance requiring a license to be first obtained by merchants. Having been convicted in the mayor's court, he appealed to the circuit court, where he was again convicted, and then appealed from that judgment to this court.

The ordinance he was charged with violating is as follows:

ORDINANCE NO. 10.

"An ordinance licensing merchants and grocers. Be it ordained by the board of aldermen of the city of Troy as follows:

"Section 1. Every person or co-partnership of persons who shall deal in the selling of goods, wares and merchandise at any store, stand or place occupied for that purpose shall be considered a merchant and take out license therefor.

"Section 2. Any person or co-partnership of persons who shall sell or offer for sale in any house, cellar, shed, booth or at any stand, any raw fish, fresh fish, salt meat, fowls, eggs, butter, lard, honey, meal, fruit, melons, vegetables and the articles usually kept for sale by grocers under the State law shall be considered a grocer and take out license.

"Section 3. Merchants and grocers shall pay an ad valorem tax equal to that which is levied upon real estate on the highest amount of all goods, wares and merchandise which they may have in their possession, or under their control, whether owned by them, or consigned to them for sale, at any time between the first Monday of March and the first Monday in September in each year; provided that no commission merchant shall be required to pay any tax on any unmanufactured article, the growth or produce of this or any other State, which may have been consigned for sale and in which he has no ownership or interest other than his commission.

"Section 4. On the first Monday in September in each year it shall be the duty of every person or co-partnership of persons as provided by this ordinance to file with the city clerk a statement of the greatest amount of goods, wares or merchandise which he or they may have on hands at any time between the first Monday in March and the first Monday in September next preceding. Said statement shall include goods wares and merchandise owned by such merchants and consigned to him or them for sale by other parties; which said statement shall be verified by affidavit.

"Section 5. Upon filing the statement verified by an affidavit, the city clerk shall enter an abstract of such

statement in a book to be provided for that purpose to be known as 'The Merchants' Tax Book,' which shall contain the names of the merchants, the amount of each statement and the amount of the tax levied thereon; which shall be at the same rate as taxes assessed for the time on real estate, and shall thereupon deliver to the marshal a license therefor under his hand and the seal of the city with the amount of the license tax due the city stated therein; and upon the payment of the amount specified in the license to the marshal he shall countersign the same and deliver it to the person or persons applying for the same.

"Section 6. The clerk shall deliver to the marshal all licenses so issued and charge him therewith in a book to be kept for that purpose.

"Section 7. A license under the provisions of this ordinance shall not be transferable or assignable and shall not authorize any person to do business under it except the person to whom it was granted; neither shall any license authorize the person licensed to carry on business by himself or agent at more than one place at the same time.

"Section 8. Any person or co-partnership of persons exercising or attempting to exercise the avocation or business in this ordinance mentioned without first taking out a license therefor, shall be deemed guilty of a misdemeanor and upon conviction shall be fined not less than ten nor more than fifty dollars.

"Section 9. The clerk and marshal shall each receive from the person to whom a license is granted the sum of fifty cents, to be paid by the person applying therefor."

The evidence of various persons tended to prove that the Standard Oil Company, a corporation of the State of Indiana, but authorized to do business in this State, owned tanks of oil near a railroad station in the limits of the city of Troy, of which oil the defendant Harris was in charge. He had the keys to the premises

and opened and locked the gate. As the agent of the Standard Oil Company, he sold oil to different persons within the time charged in the complaint, both from stationary tanks and from a wagon-tank which he drove about town. When Harris was paid he gave a receipt for the money in the name of the Standard Oil Company. There was no proof as to the scope of his agency, the extent of his authority, or whether he worked for a salary or for a commission.

The evidence shows that Harris did not own the oil and never assumed to sell it as his own property or to do business in his own name, but always as agent of the oil company. Said company had taken out no license in the city of Troy permitting it to sell oil, nor paid a city tax; but it had paid a state and county tax.

The circuit court gave declarations of law to the effect that if the defendant sold the oil from a place, plant or store, the same having been put in his control for sale, he was a merchant, whether he owned the property or not.

The following declarations given at the instance of the plaintiff were excepted to by the defendant:

"No. 1. The court declares the law to be that a merchant is one who deals in the selling of goods, wares and merchandise at any place, stand or store, and even though he may not be the owner of the goods sold, yet if such goods are consigned to him, or placed under his control for sale and to sell the same, he is, under the law, a merchant and the fact that the goods are stored at a store, stand or place and the sales thereof are made on orders, or from wagons here and there where a customer may be had, yet the person so dealing, trafficking or selling, is in law a merchant.

"No. 2. The court declares the law to be that if the defendant, Charles Harris, sold goods, wares and merchandise kept for sale under his sole control in the city of Troy, whether said goods were owned by him, consigned to him for sale, or placed in his possession

or under his control for sale, the court will find him guilty and assess his punishment at a fine of not less than ten dollars nor more than fifty dollars, provided neither defendant nor any person for whom he acted as agent, clerk or driver had a license from said city of Troy to so sell then continuing in force.

"No. 3.    The court declares the law to be that it is the duty of defendant to show his license, or the license of his employer, if acting under one, if he has such license, and if he does not show such license the law presumes that he has none, and any sale of the goods, wares or merchandise made by him is illegal."

These requested by the defendant and refused will serve to illustrate his theory of the case:

"No. 1.    The court declares that under the law and the evidence, defendant is not guilty.

"No. 2.    The court declares the law to be that even though defendant, Charles Harris, did on or about the 16th day of October, 1901, deal in the selling of coal oil and gasoline or either, in the city of Troy, Missouri, yet if in the dealing of same defendant acted as the agent of the Standard Oil Company, he is not guilty.

"No. 3.    The court declares the law to be that even though the defendant, Charles Harris, did on or about the 18th day of October, 1901, deal in the selling of coal oil or gasoline or either, in the city of Troy, Missouri, yet if in the selling of same defendant acted as the agent of the Standard Oil Company and said coal oil or gasoline or either so sold by defendant was, at the time of such sale, the property of said Standard Oil Company, then the defendant is not guilty."

The trial court sentenced the defendant to pay a fine of ten dollars and the costs of the prosecution, and to stand committed until they were paid.    From this sentence defendant appealed.

GOODE, J. (after stating the facts as above).— This case differs from any other we have seen in some

characteristics of the ordinance under which the conviction was obtained. The mayor and board of aldermen of the city of Troy, which is a city of the fourth class, are empowered to "regulate and to license and levy and collect a license tax" on various occupations and the persons engaged in them, among others on merchants of all kinds. R. S. 1899, sec. 5978.

The business carried on by the Standard Oil Company is shown by the testimony to be such as brings it within the definition of a merchant contained in the first section of the ordinance, which is similar to the statutory definition. R. S. 1899, c. 89, sec. 8540; State v. Vindquest, 36 Mo. App. 584; Kansas City v. Lorber, 64 Mo. App. 604; Kansas City v. Guest, 151 Mo. 128. It is therefore amenable to any reasonable requirement in regard to a license and a license tax.

It will be observed that while the ordinance makes provision for the granting of licenses, it does not exact a fixed sum as a license tax. It attempts to imitate the statutes which provide for licensing merchants and collecting an ad valorem tax on their wares, but lacks the efficient provision of the statutes that any one about to engage in merchandising must give a bond for the payment, at the proper time, of the merchant's tax; whereupon a license shall issue to him and he may forthwith commence business. R. S. 1899, c. 129. Instead of a provision like that, the present ordinance simply provides that all merchants and grocers shall pay an ad valorem tax on the highest amount of merchandise carried by them at any time between the first Mondays in March and September of each year and that they shall, on the first Monday in September, file with the clerk a statement showing the highest amount of goods carried between those dates, on receipt of which the clerk must deliver to the marshal a license stating the amount of the tax due the city, and on payment thereof the marshal countersigns the license and gives it to the merchant. The ordinance is further re-

markable because, if enforced according to its tenor, a person wishing to engage in the mercantile business in said city prior to the first Monday in September of any year could not obtain a permit; but some workable plan for granting licenses earlier in the year must have been adopted by the city officials, whereby the literal terms of the measure were evaded.

The effect of the ordinance is to impose an ad valorem property tax on the goods of merchants. Brookfield v. Tooey, 141 Mo. 619.

A license with or without a substantial charge for it (that is, one intended either for regulation or for revenue) may be exacted by municipalities as a prerequisite to the pursuit of a business in its borders when the statutes so prescribe. And a city may collect from merchants, under appropriate statutory authority, both a license charge and an ad valorem tax on their stocks within the taxing limits fixed by the Constitution. Aurora v. McGannon, 138 Mo. 38.

The question for decision is, was defendant Harris, who was shown to be the agent of the Standard Oil Company in charge of and vending its oils, a merchant within the reasonable meaning of the ordinance? For it is to be noted that Harris was not prosecuted as the agent or manager of a non-licensed corporation which was doing business as a merchant, but as being himself an unlicensed merchant. The circuit court declared the law on that theory, defined the meaning of the word "merchant" as used in the ordinance, held that the fact of Harris's agency could not excuse him and therefore must have convicted him on the theory that he was doing business as a merchant.

From what is said above regarding the power of the city of Troy to exact both a license and an ad valorem tax from merchants, it is clear that the Standard Oil Company was bound to pay a tax on the goods kept by it as a merchant; but the criminal liability of the agent for the company's violation of the ordinance is

not clear. Fines imposed on agents for conducting, without a license, business pursuits required to be licensed, have been upheld in cases somewhat resembling this one; but in none known to us where the violated ordinance was designed to enforce the payment of a property tax and did not name agents as subject to its penalties. City of Springfield v. Smith, 138 Mo. 645; Farmington v. Rutherford, 94 Mo. App. 328; St. Joseph v. Emert, 95 Mo. 360; Walker v. Springfield, 94 Ill. 364; Wyandotte v. Corrigan, 35 Kas. 21; Campbell v. City of Anthony, 40 Kas. 652; Mitchel v. Meridian, 67 Miss. 644; Ex parte Schmidt, 2 Texas Crim. App. 196; Railroad v. City of Attala, 118 Ala. 362; Elsberry v. State, 52 Ala. 8; Ex parte Montgomery, 64 Ala. 463.

Licenses to carry on trades or occupations, such as peddling, must be taken out and paid for by the person who engages in the occupation. State v. Emert, 130 Mo. 241; State v. Smithson, 106 Mo. 149; Wrought Iron Range Co. v. Johnson, 84 Ga. 754; Gould v. Atlanta, 55 Ga. 686; Temple v. Sumner, 51 Miss. 13; State v. Morrison, 126 N. C. 1123.

It is also the law that the one who sells as clerk or agent, an article forbidden by a criminal statute to be sold without a license, can not defend against a prosecution for making an unlicensed sale on the ground that he acted for his employer; as has always been held in prosecutions for selling intoxicating liquors without a license. Isobel v. State, 14 Mo. 86; State v. Keith, 46 Mo. App. 425; State v. O'Connor, 65 Mo. App. 324.

None of those cases furnishes in its facts or principles, a precedent for the decision of this one. In some of them the defendants were convicted of doing a particular act which the law or ordinance forbade any one to do unless the act was previously licensed; in others the license charge, instead of being a property tax, was a fixed fee; and in still others the ordinance or law enforced expressly prohibited agents as well as principals

from carrying on the business without a license, under penalty.

The dramshop law may be violated by a single sale, whereas one sale is insufficient to constitute a violation of the law in regard to merchants' licenses. There must be an unlicensed dealing in the capacity of merchant to make a crime; not so, to offend the dramshop statutes.   State v. Martin, 5 Mo. 361; State v. Cox, 32 Mo. 566.

In City of Springfield v. Smith, supra, the defendant, who was the general manager of a street railway company, was convicted of violating an ordinance which provided that no person, corporation or company should use, run or drive, or cause to be used, run or driven for hire, any street car without first obtaining a city license, the charge for which was fixed at ten dollars a car.   The opinion does not state the ground on which the defendant was held liable, but doubtless it was because he was acting as general manager of the corporation.   It is to be observed that that ordinance prohibited not only street railway companies and corporations, but all persons from running an unlicensed car, and the defendant was plainly guilty of the prohibited act.

Wyandotte v. Corrigan presents facts exactly similar, and the defendant was held responsible for the same reasons.

Campbell v. City of Anthony, was more like this case, as Campbell was fined for breach of a city ordinance requiring lumber dealers to pay a semiannual tax of twenty-five dollars, although he was merely the agent of the Rock Island Lumber Company, a foreign corporation which had a lumber yard in the city of Anthony.   The ground of his criminal liability is not discussed in the opinion, but he was held punishable on the authority of the Corrigan case.   Whether the ordinance on which the conviction was based contained words making an agent responsible does not appear.

In St. Joseph v. Emert, Farmington v. Rutherford, and Walker v. Springfield, the defendants were convicted for acting as agents of insurance companies which had failed to take out municipal licenses, and the convictions were upheld. But in each case the ordinance on which the prosecution rested prohibited any one from acting as agent for an unlicensed company under penalty of a fine.

The present case comes down to a question of legislative purpose; and as agents of merchants are not in terms made liable for the tax on the merchandise handled by them, they are not liable unless, by fair construction, they fall within the scope of the ordinance. And the ordinance being much like our statutes on the same subject, it may be pertinent to ask whether the latter mean to designate as merchants, mere clerks or agents in charge of goods to be sold at a stand, so that such agents may be fined five thousand dollars if the law is broken? We concede that if a person is a merchant, neither the state law nor this particular ordinance makes his liability for taxes on the goods carried in stock depend on ownership; for, if a merchant, he must pay taxes on consigned as well as on purchased goods. But he must possess the character of merchant to be liable for a property tax at all.

While trafficking in wares at a stand or store is an essential element of the character of a merchant (State v. Whittaker, 33 Mo. 457; State v. West, 34 Mo. 424), that element alone does not fill completely the notion of a merchant. No one thinks of an employee who acts for another in carrying on such a business as a merchant. It seems to be also essential that the dealer, although he need not own the stock of goods, should own the business, whether it be that of selling purchased wares for a profit or consigned wares for a commission. He must be a proprietor in the sense that he controls the business and is not merely a hired employee. Harris was therefore not a merchant; and, in

the absence of any provision in the ordinance expressly binding agents or clerks for the payment of the tax, the conclusion that the lawmakers of the city of Troy intended to bind an agent or a clerk engaged in running a mercantile establishment for some one else, to pay a yearly ad valorem tax on the wares of his employer, is unwarranted. Such a tax might be quite large and very onerous, and it would be an unreasonable interpretation of the municipal regulation in question to say that it compelled the defendant to pay the tax which the Standard Oil Company owed.

In support of this view we further point out that while section 7 of the ordinance contemplates the management of mercantile enterprises by agents, there is no clause which subjects an agent to punishment for conducting one without a license. A different case would be presented if agents were mentioned as responsible. But the obvious purpose of the municipality was to coerce merchants into paying a property tax on their wares, and a fine can not be justly inflicted on an employee for the owner's delinquency.

In Louisiana v. Wood, 40 La. Ann. 175, a statute provided that every insurance company, firm or individual conducting an insurance business in the State, whether such company, firm or individual was located there, or operated through a local office or agency, should pay a license on its business for each company represented, based on the gross annual amount of the premiums collected. The defendants conducted an insurance agency and were held not to be amenable to said law as they were not "doing and conducting an insurance business" within its meaning, which included, it was said, only persons or corporations who insured lives or property, received premiums, and were liable for losses. The opinion says that insurance agents can not be legally defined to be persons conducting an insurance business of any kind. That case may be compared with Walker v. Springfield, supra, in which

the defendant was held responsible because agents were named in the law.

In Mullinnix v. State, 60 S. W. (Tex. Crim. App.) 768, the law asserted to have been violated levied an annual tax on every photographer or owner of a photograph gallery. Mullinnix traveled over Tarrant county, Texas, taking photographs, offering the same for sale and soliciting business for a gallery in Dallas county which had paid no license tax in Tarrant county, though the owner of the gallery (whose agent Mullinnix was) had paid a tax in the county where the gallery was located. While it was held that Mullinnix might have been subject to a tax if the statute had been broad enough to embrace agents, it was also held that as the statute only named the owners or operators of photograph galleries, and he was not shown to operate one in Tarrant county, he was not liable. The opinion said: "The tax is not levied on the vocation of photographer, but on the owner of the gallery."

We are of the opinion, for the reasons stated, that the trial court erred in holding that it was no defense to the complaint that the defendant acted as agent in selling oils. The judgment is, therefore, reversed and the cause remanded. *Bland, P. J.,* and *Reyburn, J.,* concur.