---

PEOPLE ex rel. CUMISKY v. MAYOR OF CITY OF BROOKLYN.

(Supreme Court, Appellate Division, Second Department. February 19, 1897.)

1. MANDAMUS—AFFIDAVITS.
On mandamus to compel the mayor to grant a theater license, affidavits of his private secretary and of a police officer, showing the evidence on which was based the refusal to grant the license, and that he exercised a lawful discretion in the matter, will be presumed to have been made with the knowledge and in behalf of defendant, who did not himself answer.

2. MUNICIPAL CORPORATIONS—ORDINANCES.
The charter of Brooklyn (Laws 1888, c. 583), tit. 2, § 12, authorizes the common council to make ordinances to "license all places of public amusement." Chapter 1, art. 2, § 1, of the ordinances, provides that the mayor shall grant licenses for the purposes authorized by "section 13 of title 2" of the charter, to such residents as he may deem proper. Held, that, as section 13 of the charter contains no express reference to licenses, said ordinance may be referred for support to section 12.

3. SAME—LICENSES—DISCRETION OF MAYOR.
The power vested in a mayor to grant licenses, unless mandatory in terms, carries with it the right to exercise a reasonable discretion.

4. SAME— ONSTRUCTION OF ORDINANCE.
Chapter 2, art. 1, § 1, of the Brooklyn city ordinances, providing that licenses "shall be granted" by the mayor to persons conducting theaters' etc.; and section 2, declaring that the licenses "required to be granted" by the preceding section shall be signed by the mayor,—do not deny to such official the right to exercise a reasonable discretion, but merely make a license essential for carrying on the enterprises enumerated, and designate the mayor as the proper person to grant the same.

5. SAME—WHEN DISCRETION PROPERLY EXERCISED.
The refusal to grant a first-class theatrical license to an athletic club, on information that the real purpose of the club is to conduct prize fights, is a proper exercise of the mayor's discretion.

Appeal from special term, Kings county.

Application by Eugene J. Cumisky for a peremptory writ of mandamus to the mayor of the city of Brooklyn. From an order granting the application, defendant appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

William G. Cooke, for appellant.
Almet F. Jenks, for respondent.

BRADLEY, J. The motion for a peremptory writ of mandamus, requiring the defendant to grant a first-class theatrical license to the Surf Athletic Club, in the city of Brooklyn, was founded upon the affidavit of the relator, to the effect that he was secretary of the club,

which was duly organized for the encouragement, promotion, and cultivation of athletic exercises, gymnastic and physical culture, and all lawful sporting purposes; that the clubhouse was located at Coney Island; that the club proposed to give exhibitions and contests; and that for such purpose, and in conformity of law, the club, by its secretary, on or about June 19, 1896, duly made application to the license department of the city of Brooklyn for a first-class theatrical license, which application was refused. In opposition to the motion was read the affidavit of the person who was the private secretary of the mayor, to the effect that he was familiar with the application made by the Surf Athletic Club, and the action taken by the mayor on such application; that an investigation was made, and the information which the mayor obtained was that the only purpose which the club had in view in applying for such license was to have prize fights carried on in public at the house for which the license was desired. He also states in such affidavit that notices of such fights were published in the newspapers, and that the mayor was unable to ascertain that the club had any other purpose in view than such unlawful proceedings, and that, therefore, he, in the exercise of his lawful discretion, refused to issue the license. Also, the affidavit of a person who states that he is acting district sergeant of the Brooklyn police force attached to the precinct located at Coney Island; that he is familiar with the building for which such first-class theatrical license was applied; that in size it is about 100 by 150 feet, having a seating accommodation for about 8,000 persons; that it is not arranged like a theater, but has a stage or platform in the center, about 3 feet high and 24 feet square; and that he saw a certain poster (annexed to his affidavit) upon the wall of an hotel near by the clubhouse, advertising performances there, consisting of stated numbers of rounds between persons whose names and weights were mentioned.

It is urged on the part of the relator that the affidavits, and especially the latter one, are not available to the mayor, because it does not appear by expressions in them that they were made in his behalf or with his knowledge, and that he does not himself answer the application made for the writ. It must be assumed that the affidavits were used upon the motion in behalf of the defendant, and with his knowledge, and that they were made for such purposes. If the mayor was permitted to exercise his judgment, the affidavits tended to show the existence of a state of facts which may have been deemed by him such as to show that the license was not arbitrarily, and without reason, refused. The main question is whether the mayor was without any discretion on the subject, and, when application was made to him for the license, his power in the matter was merely ministerial, and his duty to grant it imperative. Such is the contention of the learned counsel for the relator. Generally speaking, the duties of a mayor of a city are executive and administrative. His powers, however, are dependent upon the statute and by-laws passed pursuant to it. When powers are conferred on the mayor in general terms, as incidental to his powers are his right and duty to exercise his judgment when the matter in which he is called upon to act, and

the propriety of the actions sought, are properly the subject for con-sideration.

The city charter provides that the administrative power shall be vested in the mayor, etc. Laws 1888, c. 583, tit. 3, § 1. Although the statute does not in direct terms provide by whom licenses shall be granted, it clearly contemplates that they will be granted by the mayor, as is seen by reference to the provision that the city clerk shall "countersign all licenses granted by the mayor." Id. tit. 2, § 6. The board of aldermen, known as the "Common Council," being vested with the legislative power of the city (Id. tit. 2, § 1), were given the power to make ordinances, rules, and regulations, and by-laws "to prohibit or regulate and license all places of public amuse-ment" (Id. § 12, subd. 8), and for other specified purposes. Among the ordinances of the common council was that of section 1 of ar-ticle 2 of chapter 1, which provides that:

"The mayor shall grant licenses for the purposes authorized by section 13 of title 2 of the city charter, to expire on the first Monday of April thereafter, to such residents of the city of the age of twenty-one years, duly qualified according to the ordinances of the common council, as he may deem proper, unless the com-mon council shall otherwise designate, and may revoke the same at pleasure."

There is no express reference to any licenses in section 13 of title 2 of the charter; and although power is given to the common council in that section to make, establish, alter, modify, amend, and repeal all such other ordinances, rules, police, health, excise, fire, and build-ing regulations as they may deem necessary to carry into effect the powers conferred by the act, etc., there is in that section the absence of any express provision about licenses, and it does not appear by the language there employed that ordinances for granting licenses were within the contemplation of the provisions of section 13; yet it may not be said that no ordinances of that character could have the support of its provisions. But the matter of licenses for which the common council was expressly authorized to provide by ordinances is the subject of section 12 of title 2 of the charter, and not else-where. It would therefore seem that the apparent intent of the common council was to refer to that section in the ordinances above mentioned, and that the reference was so made to section 13 by inadvertence. It was not the province of the common council to grant licenses, but, in the exercise of its legislative functions, to make provision for the granting of them by the mayor.

The rules of interpretation of statutes are alike applicable to municipal ordinances. When it is evident, in view of the purpose of a statute, that, by a strict and literal interpretation, it fails to express the legislative intent, such interpretation will not be adhered to, the portion which is false and inappropriate may be rejected, and the legislative intent be observed. Turnpike Co. v. McKean, 6 Hill, 616; People v. Utica Ins. Co., 15 Johns. 358; Spencer v. Myers, 150 N. Y. 269, 44 N. E. 942. The rejection, by interpretation, of the allusion to section 13 from the ordinance, would permit its reference for support to any provisions of the charter which expressly confer power upon the common council to make ordinances for granting of licenses. If this is a correct view of the construction and effect of

that ordinance, the mayor was not denied the power to exercise his judgment as to the propriety of granting the license applied for by the relator for his club, unless there is something further limiting his official powers in that respect. Much reliance on the part of the relator is placed upon the provisions of ordinances known as sections 1 and 2 of article 1 of chapter 2. Section 1 provides that the persons and classes of persons therein mentioned "are hereby required to be licensed, and licenses shall be granted to them by the mayor to carry on their respective trades or occupations." Among those named therein are keepers of billiard saloons, bowling alleys, shooting galleries, exhibition of circuses, menageries, and common shows, owners and managers of theaters, opera halls, playhouses, and all other places of public amusements. Section 2 provides that "the licenses required to be granted by the foregoing section shall be issued by the city clerk and signed by the mayor." Those sections probably relate to substantially all the cases in which licenses may be required or desired. They certainly embrace the subject of a license for a first-class theater, which appears to have been the ostensible purpose of the application made by the relator for the Surf Athletic Club. Unless the provisions of those two last-mentioned sections fairly require a construction which denies to the mayor the power to exercise any judgment on the subject, when an application is made to him within those provisions for a license, such effect should not be treated as intended by the common council, or as consistent with the purpose of such provisions, in view of his relations to the municipality as its administrative and executive officer.

The nature of the provision that the persons or classes of persons referred to in the ordinance are required to be licensed fairly means that license is essential to enable or permit them to pursue the occupations and institute and conduct the places of amusement and entertainment specified in the ordinance; and the further provision that licenses shall be granted to such persons or class of persons by the mayor for such purposes fairly and reasonably imports that the power is vested in the mayor to grant licenses, and that they shall be granted by him only. In terms, therefore, the provisions are not imperative, and in that respect the sections of the ordinances before mentioned are substantially in harmony. While the mayor may be permitted to exercise his judgment, his discretion is not unqualified. A denial of an application for a license may be such as to constitute an abuse of power, and be subject to review and correction by mandamus. There are many purposes for licenses, within those mentioned in the ordinance referred to, for which the mayor could not with propriety deny applications made in good faith. It is now quite well settled by authority that public policy requires that power not imperative in terms vested in the chief magistrate of a city to grant licenses should be deemed discretionary. People v. Thacher, 42 Hun, 349; People v. Grant, 58 Hun, 455, 12 N. Y. Supp. 879; People v. Grant, 126 N. Y. 473, 27 N. E. 964. Whether power granted to a public officer in general terms or by words in form permissive is or not discretionary depends upon the nature of the power or duty. When it relates exclusively to the public welfare, or is created for the protection of the public interests,

the statutory provisions conferring the power will be deemed mandatory.   Mayor v. Furze, 3 Hill, 612; Hutson v. City of New York, 9 N. Y. 163; Hagadorn v. Raux, 72 N. Y. 583.   Such is not the nature or purpose of the ordinances in question.   The case of People v. Perry, 13 Barb. 206, is deemed quite doubtful as authority, in view of the later cases upon the subject.   The difference in the view taken in the present case and that adhered to by the court in Re O'Rourke, 9 Misc. Rep. 564, 30 N. Y. Supp. 375, is one of interpretation of the ordinances of the common council.   The view here taken is that, as incidental to the power vested in the mayor to grant licenses, he is permitted to exercise his judgment in such matters, without having discretion expressly conferred upon him by the ordinance, and that the denial to him of such right in the execution of the power granted is dependent upon a mandatory provision of an ordinance of the common council in that respect.   Without reference to the question of construction of those ordinances, whether mandatory or permissive, it would certainly be remarkable to deny to the mayor the power to look behind an application made for a license to ascertain whether its actual purpose was truly represented, and, if not so, to refuse it.   He undoubtedly would have that power.   He exercised it in the relator's case.   The mayor was justified in the conclusion that a license for a first-class theater was not applicable to the purposes for which the Surf Athletic Club had prepared its building, and to which it was to be devoted; and it may be assumed that his refusal to grant the license was founded upon the facts in that respect as they then existed and was reasonably inferable from them.

These views lead to the conclusion that the order should be reversed, and motion for the writ denied.   All concur.