### 5180. THORPE *v.* MAYOR AND ALDERMEN OF SAVANNAH.

It is a lawful exercise of the police power of a municipality, whether conferred expressly or under a general welfare clause, to prescribe terms upon which citizens of the municipality shall be permitted to keep cattle within its corporate limits. As incidental to this power the municipality, through its constituted authorities, has the right to grant to a city official the discretion to permit or to refuse an application of a citizen to keep cattle within the corporate limits; and unless such discretion is arbitrarily abused, the courts will not interfere with its exercise by the officer.

DECIDED OCTOBER 31, 1913.

Certiorari; from Chatham superior court—Judge Charlton. August 16, 1913.

*W. B. Stubbs,* for plaintiff in error.

*John Rourke Jr., David S. Atkinson,* contra.

HILL, C. J. The plaintiff in error was convicted of violating a city ordinance which prohibited the keeping of any cow or cows within the corporate limits of the city of Savannah except under a permit first obtained from the health officer of the city. On certiorari the conviction was sustained, and she excepted. The brief filed in this court by counsel for the city so fairly and fully states the facts, and so clearly and, in our opinion, correctly states the law pertinent to the question raised by the record, that we adopt it without substantial change, as the opinion of this court.

In section 1 of the ordinance of the city of Savannah of September 8, 1909 (the caption of which is: "An ordinance to provide regulations touching the keeping of cows, stables for cows, dairies, milk and the sale of milk"), the following language appears: "It shall not be lawful for any person, persons, or corporations to keep or possess within the corporate limits of the city of Savannah, any cow or cows, either for the conduct of the dairy business, or for his

or her personal use, unless and except that a permit shall have been first obtained from the health officer, permitting such cow or cows to be located within the corporate limits of the city of Savannah." Section 19 contains the penal provisions, as follows: "The violation of any provision or regulation of this ordinance, and any failure to comply therewith, and the refusal or failure to comply with any direction or order of the health officer hereunder, shall be subject, upon conviction before the police court of the city of Savannah, to a fine not exceeding fifty dollars, and to imprisonment not to exceed ten days, either or both, in the discretion of the court." The plaintiff in error applied to the health officer for a permit to keep three cows on her residence lot, as she claimed, for her personal use. The entire lot, including that portion with the improvements thereon, was only thirty feet wide and ninety feet in length or depth. The health officer refused a permit for three cows, but informed the plaintiff in error that he would grant a permit for one to be kept on the lot for her personal use. One reason for his refusal to give a permit for three cows was that, for the special reason hereinafter mentioned, the lot could not be maintained in a sanitary condition with three cows kept on it. The plaintiff in error declined to apply for a permit for one cow, and she continued thereafter to keep three cows on her lot without any permit. She was afterwards summoned to appear before the police court of the city to answer for a violation of the foregoing ordinance. Her case was heard before the recorder on February 20, 1913, and, upon conviction, a fine of twenty-five dollars was imposed, with the alternative of ten days in jail.

Certiorari was applied for, and in the recorder's answer to the writ it was stated: (1) that Dr. W. F. Brunner, health officer of Savannah, testified upon the hearing of said case that he refused Mrs. Thorpe a permit to conduct a dairy on the premises in question, for the reason that the same was unsanitary; (2) that he refused a permit for keeping three cows on said premises for the further reason that the premises could not be kept in a sanitary condition; the droppings from said cows mixing with the soil and causing the entire premises to be unsanitary and objectionable; (3) that another reason for his refusal of the permit was that the supply of milk from the three cows was more than was daily needed for the use of the defendant's family, and that

he had reason to believe that the overplus of milk was being sold. The answer was traversed as to the above-stated second and third paragraphs, and the jury on the trial of this issue found "against the traverse of the second paragraph and for the traverse of the third paragraph." It follows conclusively that the fact was judicially determined, under the above-stated second paragraph of the recorder's answer, that the premises of the plaintiff in error could not be kept in a sanitary condition with three cows on the premises, for the reasons specified by the health officer of the city, and that for these reasons he refused a permit for her to keep three cows thereon. After this fact was thus established in conjunction with the other facts not controverted, the judge of the superior court rendered his judgment sustaining the decision of the recorder and dismissing the certiorari. To this judgment the plaintiff in error excepts.

The plaintiff in error contends, first, that under the aforesaid ordinance she has the legal right to keep three cows or as many as she pleases, within the corporate limits of the city, for her personal use, on naming the number of cows in her application, and that it is mandatory on the health officer to grant the permit; and, secondly, that if the ordinance does not give her this right, and invests the health officer with a discretion as to granting or refusing a permit, the ordinance is unconstitutional and void, as depriving her of her liberty of action and the equal protection of the laws. It is contended by counsel for the city that under this ordinance no person can keep a cow or cows within the corporate limits without a permit from the health officer, who is invested with a discretion as to the grant or refusal of the permit, as the only means of safeguarding the public health; and, secondly, that ordinances of a municipality, passed in the exercise of the police power, for the preservation of the public health, as the ordinance in question was passed, are not unconstitutional and void for any reason. In his judgment dismissing the certiorari the learned judge of the court below, after quoting from section 1 of the ordinance and referring to section 19 as containing the penalty for violations of the ordinance, says: "Whether the health officer acted arbitrarily or not is not the question before me, although it is alleged in the petition. Such ordinances, designed to protect the health of the entire community, must of necessity have some drastic provisions

49

in order to be effective. If the health officer exceeds his powers, the courts may interfere, but the mere exercise of judgment, when such prerogative is given for the general good, is not necessarily reversible, unless it be so patently oppressive as to leave the court no alternative. The ordinance is not unreasonable. There is a provision requiring a permit before a cow is kept on premises within the corporate limits; cows were kept by the plaintiff in certiorari without a permit, and the ordinance is, therefore, violated."

The power vested in an officer or public body to grant licenses, unless mandatory in terms, carries with it the right to exercise a reasonable discretion. 25 Cyc. 622, 623, and cases cited in notes 21 and 22. In People *v.* Wurster, 14 App. Div. 556 (43 N. Y. Supp. 1088), the court said: "The nature of the provision that the persons or classes of persons referred to in the ordinance are required to be licensed fairly means that license is essential to enable or permit them to pursue the occupations and institute and conduct the places of amusement and entertainment specified in the ordinance; and the further provision that licenses shall be granted to such persons or class of persons by the mayor for such purposes fairly and reasonably imports that the power is vested in the mayor to grant licenses, and that they shall be granted by him only. In terms, therefore, the provisions are not imperative. . . While the mayor may be permitted to exercise his judgment, his discretion is not unqualified. A denial of an application for a license may be such as to constitute an abuse of power. . . It is now quite well settled by authority that public policy requires that power not imperative in terms, vested in the chief magistrate of a city, to grant licenses should be deemed discretionary. People *v.* Thacher, 42 Hun, 349 ; People *v.* Grant, 58 Hun, 455 (12 N. Y. Supp. 879), s. c. 126 N. Y. 473 (27 N. E. 964). The view here taken is that, as incidental to the power vested in the mayor to grant licenses, he is permitted to exercise his judgment in such matters, without having discretion expressly conferred upon him by the ordinance, and that the denial to him of such right in the execution of the power granted is dependent upon a mandatory provision of an ordinance of the common council in that respect."

It is peculiarly proper that discretion as to the granting or refusal of permits for the sale of milk, and for other purposes looking to the preservation of the public health, should be committed to

health officers or boards of health of a city. People ex rel. Lieberman *v.* Vandecarr, 81 App. Div. 128 (80 N. Y. Supp. 1108), s. c. 175 N. Y. 440 (67 N. E. 913, 108 Am. St. R. 781), s. c. 199 U. S. 552 (26 Sup. Ct. 144, 50 L. ed. 305). City councils may exercise their police powers through the agency of the municipal health officers, in matters pertaining to health. It is the invariable custom to delegate such authority to such officers, or other like functionaries, and the authority to do so is well recognized. New Orleans *v.* Charouleau, 121 La. 890 (46 So. 911, 18 L. R. A. (N. S.) 368, 126 Am. St. R. 332, 15 Ann. Cas. 46); Fischer *v.* St. Louis, 194 U. S. 361 (24 Sup. Ct. 673, 48 L. ed. 1018). In the case at bar the health officer of Savannah is expressly designated as the officer to grant a permit under the ordinance in question, and he is clearly invested with a discretion as to grant or refusal of such a permit. The ordinance itself could not in imperative and mandatory terms specify all the cases in which the health officer should be required to grant a permit; because each case for a permit necessarily presents its own special features and conditions, each of which requires personal investigation and a consideration of the size of the lot, its location or neighborhood, the number of cows applied for to be kept on the lot, and all other matters which might affect the public health; and the health officer of the city is logically and preeminently the city official to conduct such investigation and consider all such conditions as a prerequisite to exercising his discretion and judgment in granting or refusing a permit. The health officer in this case did not exercise his discretion and judgment arbitrarily; his refusal to grant a permit for three cows was on the ground that the small lot belonging to the plaintiff in error could not, for the special reasons assigned by him, be maintained in a sanitary condition with three cows kept on it. This view, as above stated, was expressly upheld in the superior court by the verdict of the jury that heard the facts, pro and con, upon this particular ground of refusal. He offered to grant a permit for one cow, but the plaintiff in error declined to apply for it, and deliberately violated the ordinance by keeping three cows on her lot, within the corporate limits, without a permit.

"One of the chief purposes for the institution of municipal government is the conservation of the public health and safety. No more important obligation is confided to municipal corporations.

The nature of the ordinances they shall adopt for this purpose is largely a matter within the discretion of the local authorities." 3 McQuillin, Mun. Corp. § 899; 28 Cyc. 709. The keeping of cows and dairies within the corporate area is a subject of local police regulation (3 McQuillin, Mun. Corp. § 909, pp. 1948, 1950, and cases cited in notes; § 969, p. 2152, and note 37), and likewise the inspection, testing, and sale of milk. Ibid. § 969, pp. 2149, 2154, and the many cases cited in the notes thereto. The City of Savannah having the inherent right under the police power to regulate the keeping of a cow or cows, and cow stables and milk dairies, within its corporate limits, for the preservation of the public health, it follows that the plaintiff in error has not been deprived of any constitutional or legal right by the ordinance of September 8, 1909, or by an act of the health officer thereunder. People ex rel. Lieberman v. Vandecarr, supra; Adams v. Milwaukee, 144 Wis. 377 (129 N. W. 518, 43 L. R. A. (N. S.) 1066); s. c. 228 U. S. 572, 33 Sup. Ct. 610, 57 L. ed. 971). It is not "an element in the liberty secured by the constitution of the United States that one person, or a minority of persons, residing in a community and enjoying the benefits of its local government," should have the power of subordinating the welfare and safety of the entire population to their notions of what may be the best means of safeguarding the health of that community. Jacobson v. Massachusetts, 197 U. S. 11, 38 (25 Sup. Ct. 358, 366, 49 L. ed. 643, 3 Ann. Cas. 765).

*Judgment affirmed.*