SAMUELS *v.* COUZENS.

1. MUNICIPAL CORPORATIONS — ORDINANCES—VALIDITY—MANDAMUS —ESTOPPEL.
   By applying for a jeweler's license pursuant to an ordinance of the city of Detroit, plaintiff recognized its validity, and cannot question it in mandamus proceedings to compel the mayor of said city to grant said license.

2. CONSTITUTIONAL LAW—VALIDITY OF ACT SHOULD NOT BE DECIDED UNLESS SQUARELY PRESENTED.
   A court should not exercise the power conferred on it of deciding whether the act of a co-ordinate branch of the government is void except in cases where it is squarely presented, or in cases where the jurisdiction of the court is involved.

3. MUNICIPAL CORPORATIONS—LICENSES—ORDINANCES—TAXATION— FEE.
   The fee of $1 for the issuance of a jeweler's license under a city ordinance cannot be said to be in the nature of a tax imposed on the particular class of business affected.

4. SAME — DETROIT CHARTER—ORDINANCES—LICENSES—MANDATORY —DISCRETIONARY—MANDAMUS.
   An ordinance of the city of Detroit containing provisions that an application thereunder for a jeweler's license should contain an agreement that applicant would accept the license if granted him, that it might be revoked at the will of the mayor, that a fee of $1 be charged for said license "which shall be granted" for one year, construed in connection with chapter 3, § 7, of the charter of said city, providing that one of the powers and duties of the mayor is to issue and revoke licenses under ordinances, and *held*, that the power conferred on the mayor by said ordinance is not mandatory, but a reasonable discretion is conferred, and where so exercised in refusing a license its issuance might not be compelled by mandamus.
   WIEST and BIRD, JJ., dissenting.

On power of municipal corporation to make right to transact certain business dependent upon consent of municipal authorities, see note in 9 L. R. A. (N. S.) 659.

Certiorari to Wayne; Jayne (Ira W.), J. Submitted January 12, 1921. (Calendar No. 29,470.) Decided July 19, 1921.

Mandamus by Joseph Samuels to compel James Couzens, mayor of the city of Detroit, to grant a license to engage in business. From an order granting the writ, defendant brings certiorari. Reversed.

*Walter Barlow* (*Clarence E. Wilcox* and *James R. Walsh,* of counsel), for appellant.

*Sidney E. Doyle,* for appellee.

SHARPE, J. The common council of the city of Detroit, in July, 1919, adopted an ordinance entitled:

"An ordinance to regulate and license the business of selling jewelry, other than second-hand jewelry in the city of Detroit."

It became effective on July 30, 1919. The plaintiff on September 4th applied to the defendant as mayor of the city to issue him a license pursuant thereto. It is conceded that his application and bond complied with the requirements of the ordinance. The defendant refused to issue the license for the reason that plaintiff had theretofore been in the habit of deceiving and defrauding the public as to the quality of the jewelry sold by him and had so conducted his business that it was not in the public interest that he should be permitted to continue the same. The plaintiff, claiming that no discretion was lodged in the defendant under the ordinance, brought mandamus to compel him to issue the license. The matter was heard in the circuit court on petition and answer. The trial court held with plaintiff and ordered the writ to issue. Defendant seeks a review of the proceeding in this court by certiorari.

The validity of the ordinance is not before us for

consideration. The plaintiff asked for and was granted relief pursuant to its provisions. By so doing, he conceded its validity. The trial judge, in his opinion, suggests the question as to whether the power conferred on the mayor "comes within the mandate to provide for guarding the public peace and health and protecting the safety of persons and property," and says, "Upon that we are not to pass at this time." A court should not exercise the power conferred on it of deciding whether the act of a co-ordinate branch of the government is void except in cases where it is squarely presented, or in cases where the jurisdiction of the court is involved, as in *Anway* v. *Railway Co.*, 211 Mich. 592. We refer to it only because, subsequent to the submission of the case in this court, briefs were filed, at our request, in which the question is ably discussed.

The only question before the court is whether, under the ordinance, the defendant may exercise a discretion in issuing a license.

The controlling provisions of the ordinance are:

"SECTION 1. No person, firm or corporation shall engage in the business of selling jewelry, other than second-hand jewelry without first having obtained a license from the mayor of the city of Detroit.

"SECTION 2. Any person, firm or corporation desiring to engage in the business of selling jewelry shall make application in writing to the mayor of the city of Detroit, stating the location in which he desires to engage in business, and containing an agreement on the part of the applicant that he will accept the license, if granted him, and that it may be revoked at the will of the mayor.

"Before granting a license it shall be the duty of the mayor to require a sufficient surety bond in the amount of $200 to cover any loss or damage to any citizen doing business with such licensee. A fee of $1 shall be charged for the issuance of this license which shall be granted for a period of one year, but

all licenses shall expire July 1st of each year."
\* \* \*

The purpose of the ordinance as expressed in its title is "to regulate and license." The fee charged cannot be said to be in the nature of a tax imposed on the particular class of business to be affected by it. The fact that no rules or conditions are prescribed to govern the action of the mayor may well be urged as affecting its validity, but in our opinion is not decisive of the question whether the power vested in him is mandatory or discretionary. We are but called upon to construe it as it reads and not in view of any hardship which may result from anticipated arbitrary or capricious conduct on the part of the mayor in the performance of the duties imposed on him under it.

The language employed does not in express terms confer any discretionary power. Section 2, however, provides that the application shall contain "an agreement on the part of the applicant that he will accept the license, *if granted him,* and that it may be revoked at the will of the mayor." The application presented by the plaintiff to the mayor contained this provision. The charter of the city (chap. 3, § 7) provides that one of the powers and duties of the mayor is to "issue and revoke licenses in all cases where licenses may be granted hereunder and under the ordinances of the city." In 25 Cyc. p. 622, the rule is thus stated:

"The power vested in the officer or public body to grant licenses, unless mandatory in terms, carries with it the right to exercise a reasonable discretion; but this discretion is to be exercised reasonably, not arbitrarily."

Among the cases cited in support of this rule are *People* v. *Grant,* 126 N. Y. 473 (27 N. E. 964) ; *People* v. *Wurster,* 14 App. Div. 556 (43 N. Y. Supp.

1088).   In the *Grant Case*, the authority conferred on the mayor reads as follows:

"The mayor shall have authority to grant licenses to any person engaged in and carrying on the business of an auctioneer, or desiring to be so engaged, on such person filing a bond," etc.

In the opinion it is said:

"The act does not, in terms or by fair implication, require the mayor to grant such licenses, but, by necessary implication, confers the power to refuse them when, in his judgment, he thinks the public interest requires it.   A power to grant a privilege to one is inconsistent with the possession on the part of another of an absolute right to exercise such privilege.   The requirement that a person must secure leave from some one to entitle him to exercise a right, carries with it, by natural implication, a discretion on the part of the other to refuse to grant it, if, in his judgment, it is improper or unwise to give the required consent."

In the *Wurster Case* the court says:

"It is now quite well settled by authority that public policy requires that power, not imperative in terms, vested in the chief magistrate of a city to grant licenses, should be deemed discretionary."

A somewhat similar question was presented in *Thorpe* v. *Mayor, etc., of Savannah*, 13 Ga. App. 767 (79 S. E. 949).   The court held that—

"The power vested in an officer or public body to grant licenses, unless mandatory in terms, carries with it the right to exercise a reasonable discretion."

The *Wurster Case* is quoted from at length in support of this holding.

We have not overlooked the decision in *People* v. *Perry*, 13 Barb. (N. Y.) 206, on which plaintiff relies, which apparently holds to the contrary.   It can only be distinguished, if at all, by the fact that in that case the mayor refused to grant any licenses whatever.

Plaintiff's counsel relies on the words *"which shall be granted"* in the second paragraph of section 2 as imposing a mandatory duty on the defendant.    In our opinion, these words apply only to the period for which the license shall be granted, one year.·    We therefore conclude that the power conferred on the mayor is not mandatory in form and that it confers on him a reasonable discretion in the issue of such licenses. There is no, claim that he did not so exercise it.

It follows that the order made that a writ, of mandamus issue must be set aside and the petition therefor dismissed, with costs to defendant.

STEERE, C. J., and MOORE, FELLOWS, STONE, and CLARK, JJ., concurred with SHARPE, J.

WIEST, J. (*dissenting*).    I cannot concur in this opinion.    In my judgment the ordinance does not admit of the construction given it, and as construed so obviously offends against constitutional safeguards as to render it void.    It seems to me the ordinance is open to a construction within legitimate lines and such course should be adopted.    It is presumed that the enacting body intended no violation of constitutional rights, and in giving construction to the ordinance we should, if possible, hold it within legitimate bounds. If this cannot be done then we ought to hold it void.

The question of construction of the ordinance and the power of the municipality in the premises demands that we keep in mind the fact that the ordinance relates to a lawful business and one of right and not one of permission, and as to such a business, while there may be regulation, the ordinance must define all of the conditions and requirements upon which the license shall issue and cannot leave anything to the discretion of municipal officers.    In his petition for writ of mandamus in the circuit court plaintiff raised the question of the validity of the ordinance, and while

it is true the question is not pressed in the brief filed here and, therefore, we may decline to consider it, yet I am of the opinion that the public importance of the matter requires that we express an opinion upon the validity of the ordinance as now construed.

If the defendant may, as mayor, in his discretion, refuse to issue a license, then the ordinance vests arbitrary power in him, for it establishes no rule for his guidance, provides no opportunity for an applicant to be heard, grants no right of review and affords no remedy for abuse of discretion. Such uncontrolled power cannot be justified by indulging in the presumption that an administrative officer will perform his duty and not act arbitrarily. Citizens may engage in business of this character of right, and this right, while it may be regulated, cannot be subjected to the unguided will or discretion of any official. The ordinance should be construed to make it the duty of the mayor to issue the license upon plaintiff's compliance with the express requirements thereof.

A reading of the case of *People* v. *Grant*, 126 N. Y. 473 (27 N. E. 964), convinces me that it bears no analogy to the case at bar. The very purpose of the law under consideration in that case was to limit the number of auctioneers to be licensed and to leave the selection to the discretion of the mayor; and this but followed the settled policy of that State with reference to auctioneers, for at an early date the law limited their number and provided for their appointment. To apply the reasoning of that case to the ordinance in this case, it seems to me, ignores the principle underlying and applied in that case as justifying the decision and not at all applicable here.

The power of municipal control over a business or vocation in which no one can engage without permission cannot be made to apply to a business or vocation in which any one may engage as a matter of

personal right subject only to reasonable regulation. The gist of that decision is that auctioneers have never been permitted to engage in that occupation as of right, but have always been required to obtain permission, and so, in a sense, have been appointees, enjoying special privileges subject to special conditions and restrictions. As stated by the court:

"There has been no time in the history of the State when it was lawful for citizens generally to pursue the occupation of auctioneers or to engage in the business of selling property at public vendue."

There has never been a time in the history of this State, or any other so far as I have been able to ascertain, when it was not lawful for citizens to engage in the business of conducting a jewelry store as of right and without permission.

The case of *People* v. *Wurster*, 14 App. Div. 556 (43 N. Y. Supp. 1088), is in my judgment not in point upon the question of the construction of this ordinance. In that case it was held that the ordinance did not make it imperative upon the mayor to grant a license. This, without qualification, would make the ordinance fall within the evil of vesting arbitrary power in the mayor and such was evidently apparent to the court, and to avoid that the court held:

"While the mayor may be permitted to exercise his judgment, his discretion is not unqualified. A denial of an application for a license may be such as to constitute an abuse of power and be subject to review and correction by mandamus."

Is it intended in construing this ordinance to adopt that qualification of the power of the mayor? If so, the query arises, How can there be a review of the action of the mayor if the matter of granting or refusing a license is to be determined by him in his discretion and not according to the terms and con-

ditions fixed in the ordinance to guide him? In what manner can the plaintiff review the action or discretion of the mayor in this case? A discretionary power, if made subject to review, may not be void, but the power must be defined in the ordinance and placed within bounds.

In *Thorpe* v. *Mayor, etc., of Savannah,* 13 Ga. App. 767 (79 S. E. 949), the court had under consideration a case involving the power of a municipality under the police power to preserve the public health.

The case of *People* v. *Perry,* 13 Barb. (N. Y.) 206, is in point, and easily distinguishable from the *Grant Case* upon a consideration of the elementary difference in the governing rule between a business or occupation always recognized as one of personal right, subject only to reasonable regulation, and one not of personal right and always requiring permission. In the *Perry Case* the statute prohibited the exercise of the vocation of booking emigrant passengers without a license granted by the mayor, and the mayor claimed that the law should be construed to vest in him the power of granting or withholding such license, as in the exercise of his discretion he should see fit, while the relator insisted that, upon complying with the requirements of the law he was entitled to a license as a matter of legal right. The court said:

"But for this statute, any person might 'exercise this vocation.' The statute, therefore, is an innovation upon the common law, and it will not be presumed that the legislature intended that the innovation should extend any farther than the language of the act plainly declares. If it had been intended that the number of persons who should engage in the business, specified in the section, should be limited, or that the business should be altogether prohibited, in the discretion of the mayor, the rules of interpretation require us to suppose such intention would have been distinctly expressed. It is a cardinal rule, in the

construction of statutes which change the common law, that the meaning shall not be extended beyond the fair import of the terms found in the act itself.   In this act I am unable to perceive anything which indicates a legislative intention to vest in the mayor any other discretion than that of determining whether or not the bond offered by the applicant is satisfactory.
\*    \*  \*

"Upon complying with all these prerequisites, as I understand the law, any citizen has a legal right to exercise such vocation.   Of course, it is for the mayor to decide whether the bond is satisfactory, but if it be, upon the execution and delivery of such bond, and the payment of the license fee prescribed, I do not see that the mayor has any alternative but to grant the license."

This ordinance is capable of construction in accordance with constitutional provisions and the preservation of rights, and it should be so construed and applied according to its terms and it ought not to be so construed as to constitute it a violation of recognized rights and privileges under our system of government.

In the opinion it is held that the ordinance vests a reasonable discretion in the mayor.   What guide has he?   The ordinance is silent upon that subject. What range may he take in considering subjects to guide his discretion?   How is his discretion to be reviewed and what standard shall be adopted to measure his act when he refuses to license?   What showing must an applicant make under this ordinance in order to move the discretion of the mayor and obtain a license?   This ordinance lays down no such rule as was applied by the defendant.   Therefore, he assumed, without authority, a naked, arbitrary and despotic power, acknowledging no limitations and recognizing no guidance or restrictions.   The ordinance under the construction given it, having in mind that it requires a license to carry on a business of right, is void, for

the reason that it leaves the granting of the license to the unguided discretion of the mayor. It helps none to say that the mayor must act reasonably.

In *Smith* v. *Hosford,* 106 Kan. 363 (187 Pac. 685), the evil of leaving power to issue licenses to the discretion of an official is well pointed out.

"It is urged that all officers are presumed to do their duty and act fairly, and that it must be presumed that officers called upon to grant permits of this sort will not act arbitrarily or capriciously. Very well. The trouble with this ordinance is that it puts it in the power of such officers thus to act whether they are so disposed or not, and such assumed authority is a transgression upon the rights of citizens and an infringement upon the constitutional safeguards by which they are protected."

In *City of Richmond* v. *House,* 177 Ky. 814 (198 S. W. 218), the court said:

"It will be observed that this ordinance does not prescribe any rules or conditions with which the applicant must comply, or by which the board of council is to be governed in determining whether the permit will be granted or refused. On the contrary, the board of council is vested with an arbitrary discretion, which it may exercise in favor of one citizen and against another, although the circumstances may be practically the same. It follows that the ordinance is invalid."

To the same effect is the case of *Commonwealth* v. *House,* 177 Ky. 829 (198 S. W. 218).

In the case of *City Council of Montgomery* v. *West,* 149 Ala. 311 (42 South. 1000, 9 L. R. A. [N. S.] 659, 13 Ann. Cas. 651), it was held that a municipal ordinance providing that:

"No person shall set up or operate a steam engine, planing-mill or planing machine, foundry, blacksmith-shop, cotton-gin, bakery, an establishment for boiling soap, or any similar establishment within the city without first obtaining the consent of the council,"

was void in not prescribing a general uniform rule of action and as permitting an opportunity for the exercise of an arbitrary discrimination in favor of a few.

In *City of Richmond* v. *Dudley*, 129 Ind. 112 (28 N. E. 312, 13 L. R. A. 587), it was held that:

"Municipal ordinances placing restrictions upon lawful conduct, or the lawful use of property, must, in order to be valid, specify the rules and conditions to be observed in such conduct or business; and must admit of the exercise of the privilege by all citizens alike, who will comply with such rules and conditions; and must not admit of the exercise, or of an opportunity for the exercise, of any arbitrary discrimination by the municipal authorities, between citizens who will so comply."

In *Mayor, etc., of Baltimore* v. *Radecke,* 49 Md. 217, the ordinance prohibited any person from putting up a steam engine in the city of Baltimore without the consent of the mayor.   The court said:

"It (the ordinance) lays down no rules by which its impartial execution can be secured or partiality and oppression prevented.   *   *   *   When we remember that this action or non-action may proceed from enmity or prejudice, from partizan zeal or animosity, from favoritism and other improper influences and motives easy of concealment and difficult to be detected and exposed, it becomes unnecessary to suggest or to comment upon the injustice capable of being wrought under cover of such a power, for that becomes apparent to every one who gives the subject a moment's consideration.   In fact, an ordinance which clothes a single individual with such power, hardly falls within the domain of law, and we are constrained to pronounce it inoperative and void."

In *Commonwealth* v. *Maletsky,* 203 Mass. 241 (89 N. E. 245, 24 L. R. A. [N. S.] 1168), the ordinance provided that:

"No person shall use, occupy or maintain any build-

ing for the purpose of picking, sorting or storage of rags therein, without a permit in writing from the chief of the fire department."

The court said:

"Can the city of Chelsea also forbid any one from using for this purpose a building constructed in exact conformity with its requirements unless he shall also have procured a written permit to do so from the chief of its fire department? The effect of this additional requirement is to leave it wholly to the will of that officer whether or not any person shall be permitted to engage in this business. No rules are provided for the exercise of his judgment; there is no appeal from his determination to the city council or the board of control. * * * Doubtless it is to be expected that a subordinate officer entrusted with such unlimited power will use it wisely and with a view only to the public good; but, as in *Winthrop* v. *New England Chocolate Co.*, 180 Mass. 464 (62 N. E. 969), there is nothing in the ordinance to guide him in passing upon the applications that may be made to him. His action in revoking a permit once issued may be appealed from; but his refusal to issue any permit is final."

See, also, 19 R. C. L., p. 813. Cases might be multiplied but I shall content myself in calling attention to a few. *Walsh* v. *City of Denver*, 11 Colo. App. 523 (53 Pac. 458); *In re Frazee*, 63 Mich. 396; *State* v. *Dubarry*, 44 La. Ann. 1117 (11 South. 718); *Yick Wo* v. *Hopkins*, 118 U. S. 356 (6 Sup. Ct. 1064); *Ingham* v. *Brooks* (Conn.), 111 Atl. 209; *State* v. *Tenant*, 110 N. C. 609 (14 S. E. 387, 15 L. R. A. 423).

The action of the court below should be affirmed, or the ordinance as construed be held to be void.

BIRD, J., concurred with WIEST, J.