LLOYD JOHNSON, Appellee, v. J. D. CRAIG, Appellant.

ANIMALS:  Malicious Spreading of Disease—Evidence—Sufficiency.
1   Evidence reviewed, and held wholly insufficient to show that de-
    fendant had spread disease among plaintiff's animals.

EVIDENCE:  Opinion—Human Tracks—Identity.  Certain indefinite
2   testimony concerning certain tracks, and opinion and conclusion
    as to *who* made the tracks, condemned as wholly incompetent.

*Appeal from Adair District Court.*—HON. LORIN N. HAYS,
                            Judge.

SATURDAY, OCTOBER 30, 1915.

ACTION for actual and exemplary damages for malicious
injury. There was a verdict and judgment for the plaintiff
for actual damages only. The defendant appeals.—*Reversed*
and *Remanded.*

*Frank B. Wilson,* for appellant.

*Musmaker & Williamson,* for appellee.

EVANS, J.—The plaintiff's action is predicated upon the
claim that, in September, 1913, the defendant carried into
the plaintiff's hog pasture two carcasses of hogs which had
died of disease, and that the plaintiff's hogs
were thereby infected with the same disease,
resulting in great loss to plaintiff. There is
no direct evidence in support of any material
elements of plaintiff's case. He relies wholly upon circum-
stantial evidence. The important question presented to us on
this appeal is whether the evidence is sufficient to sustain the
verdict and judgment against the defendant.

The parties are farmers, living upon adjoining farms.

1. ANIMALS : mali-
cious spread-
ing of disease :
evidence : suf-
ficiency.

The defendant is the uncle of the plaintiff. The plaintiff is the owner of an 80-acre farm, being the south one half of a quarter section. Defendant is the owner of a 120-acre farm, adjoining same on the north. The plaintiff's farm was enclosed with a hog-tight fence and was nearly all used as a hog pasture. At the time of the occurrences involved herein, the plaintiff had therein from 135 to 170 pigs. On September 6th, he found the carcasses of two dead hogs lying near the northwest corner of his farm, and being from two to five rods distant from the fence on the north and west. One carcass had been largely eaten and the other was in an advanced stage of putrefaction. The principal circumstances upon which the plaintiff relied, on the trial, were as follows:

(1) Certain tracks of a human foot were found in the cornfield on the defendant's land, a short distance north of where the carcasses were found.

(2) There were also tracks of a horse's foot found in such cornfield.

(3) The pig that was capable of identification was black in color, "with a few white spots".

(4) It was also marked with a V-shaped cut in the left ear.

(5) The defendant had lost many pigs as a result of disease, shortly prior to this time.

(6) The defendant had pigs similar in color to the dead pig, and his mark was a V-shaped cut in the left ear.

As to the ownership of the dead hogs, it appeared also, from the testimony on behalf of the plaintiff, that he himself had hogs of the same mixed color as the defendant, and that his mark also was a V-shaped cut upon the left ear. The only distinction any witness made as between the two marks was that the defendant's mark was a little "closer to the head"; whereas the plaintiff's mark was about the middle of the edge of the ear.

As to the presence of hog disease, it appeared, in the testimony on behalf of plaintiff, that, for many months, it

had been present among the hogs of the neighbors in the near vicinity. Plaintiff is a single man, and made his home with his father, about a quarter of a mile distant from his own farm. The disease appeared among his father's hogs in February. Thereafter, it appeared among the hogs of plaintiff's brother, on a farm near by; and thereafter, among the hogs of another brother, upon a farm near by. Shortly thereafter, the defendant's hogs were infected; and about the 10th of September, the disease appeared among the hogs of the plaintiff. Many other neighbors suffered in like manner. The loss to all parties was very great, by reason thereof.

As to the tracks of human feet in the cornfield, the following from the testimony of the plaintiff as a witness will denote the general character of the evidence:

2. EVIDENCE: opinion: human tracks: identity.

"This strip of grass, directly across from where the pigs were laying, was a track, that looked to me like an eight or nine shoe." Q. "Did you go over there and follow that track, to any extent, at that time, Mr. Johnson?" A. "No, sir; I looked at the size of this track, and it convinced me he had throwed it." (Defendant objects to what the witness says he was convinced of.) Q. "What did you do then?" A. "As soon as I had seen this track, I went over to my place and penned up my hogs; when I found these pigs and noticed the mark, I was satisfied it was J. D. Craig's. . . . I am acquainted with J. D. Craig, and know about what size his feet are." Q. "What would you say as to that track being made by a foot about the size of J. D. Craig's?" (Defendant objects to the question as incompetent, immaterial and irrelevant and calling for the opinion and conclusion of the witness. The Court: "He may describe the track." Defendant excepts.) . . . A. "It looked to me like they would correspond all right. I think I know what size track J. D. Craig's shoe would make; I saw those tracks near the fence." Q. "I will ask you to tell whose tracks those were, in your opinion?"

(Defendant objects as incompetent, immaterial and irrelevant, asking for an opinion and conclusion, and not proper evidence for the jury. Sustained.) A. "The ground was very loose, it was before the rains, and where he went it was cleared and there was no weeds, and the ground was loose and you could track them as plain as if it had been made in the snow." Q. "Who, in your opinion, made those tracks, Mr. Johnson?" (Objected to as incompetent, irrelevant and immaterial, calling for an opinion and conclusion of the witness, and no proper foundation having been laid. Sustained.) A. "I am on speaking terms with J. D. Craig, that is all; I see him quite often; I have lived all my life within three quarters of a mile of him; have been around where he was a good deal; I noticed the size of his foot." Q. "Well now, from what you have noticed from the size of his foot, as to the size of his feet, in your opinion, who made those tracks you testified about?" (Defendant objects to the question as incompetent, irrelevant and immaterial, calling for the opinion and conclusion of a witness, and no proper foundation being laid. The Court: "I don't know what the witness may mean by saying that he has noticed the size of his foot; if he means by that, that he noticed the size of his tracks, he may answer; if that's the way you want to be understood, otherwise I think the objection ought to be sustained to it.") Q. "Well, Mr. Johnson, you have testified that you knew the size of his feet; what do you say as to whether or not you know the size of the tracks he makes?" A. "It looked to me like they would be the same." (Objected to as incompetent, irrelevant and immaterial and asks to have the answer stricken. The Court: "I think this man ought to show his observation along that line, please observe the question.") Q. "You have observed his tracks, have you, Mr. Johnson?" A. "I don't know that I have, before this time. I have noticed the size of his feet because he wears a bigger shoe than most any man." Q. "You have noticed the size of his tracks before or since,—have you ever noticed the size of the track he makes, Mr. Johnson?" (Ob-

jected to as incompetent, immaterial and irrelevant. Objection overruled. Defendant excepts.) A. "I have afterwards, yes." Q. "Now from what you know of the size of his tracks, and the tracks that he makes, and what you know of the size of those tracks you testified about in the cornfield, who, in your opinion, made those tracks in that cornfield?" (Defendant objects to the question as incompetent, immaterial and irrelevant. Objection overruled. Defendant excepts.) A. "J. D. Craig."

Passing the question of the competency of the foregoing testimony (and it was clearly incompetent), this is the kind of evidence which is relied upon as connecting the defendant with the alleged offense. It was claimed that the carcasses weighed about 70 pounds each. The distance from defendant's home to the place where they were found was three quarters of a mile. The defendant's land adjoining the plaintiff at this point was farmed by a tenant, and not by the defendant. The line fence between plaintiff and defendant was hog-tight, and there were no openings in the same. It does not appear that any evidence was found of the place where the carcasses were carried over the fence.

There is no other fact or circumstance in the record which has any tendency to show either: (1) that the carcasses in question were carried into the plaintiff's lot by any person or (2) that the defendant was connected with such act, if any. Much of the evidence introduced for the plaintiff was clearly objectionable and should have been excluded. We need not, however, deal with this question. It is clear that the evidence in the record was insufficient to sustain the verdict. The judgment below must, therefore, be reversed. upon such ground.—*Reversed* and *Remanded.*

DEEMER, C. J., WEAVER and PRESTON, JJ., concur.