STATE OF IOWA, Appellee, v. ROSCOE BURCH, Appellant.

CRIMINAL LAW: Trial—Continuance—Discretion. Refusal of a con-
1  tinuance because of the enforced absence of the principal counsel
for the accused is not necessarily reversible error.

CRIMINAL LAW: Instructions—Correct But Not All-Embracing. In-
2  structions are all-sufficient, in the absence of request for additional
elaboration, when they are correct as far as they go.

CRIMINAL LAW: New Trial—Misconduct in Argument. Argument
3  reviewed, and condemned as improper.

INDICTMENT AND INFORMATION: Issues, Proof, and Variance—
4  Principal and Accessory. Principle reaffirmed that no variance re-
sults from charging the accused as a principal and establishing
the fact that he was an accessory before the fact.

APPEAL AND ERROR: Reservation of Grounds—Constitutional Questions. Constitutional questions not presented to the trial court will not be considered on appeal.

CRIMINAL LAW: Accomplices—Corroboration. On a charge of larceny of hogs, evidence of the loading of hogs late at night and under somewhat unusual circumstances reviewed, and held to present a jury question on the issue of corroboration.

CRIMINAL LAW: Evidence—Competency—Footprints. Testimony of the existence of footprints of a human being, found several days subsequent to the larceny in question, and along the route claimed to have been taken by the thieves in driving away the animals, is wholly incompetent, in the absence of *some* evidence connecting the accused with such footprints.

*Appeal from Madison District Court.*—L. N. HAYS, Judge.

MARCH 6, 1923.

THE defendant was convicted of larceny of hogs, and appeals.—*Reversed.*

*A. W. & Phil R. Wilkinson* and *W. S. Cooper,* for appellant.

*Ben J. Gibson,* Attorney-general, and *Leo C. Percival,* County Attorney, for appellee.

PRESTON, C. J.—The indictment charges, in substance, that Roscoe Burch and Walter Debord did steal six red hogs and one black hog, of the value of $127.50, the property of Tom Jackson. The jury found the value of the hogs as alleged. The judgment was that defendant Burch be confined in the reformatory at Anamosa not exceeding five years. Defendant Burch pleaded not guilty, and was put on trial separately.

Defendant is a young farmer, with a small family, living about three fourths of a mile from Jackson's. The defendant also had a farm some 18 miles from his residence, upon which Debord was his tenant. This farm was near Booneville. Defendant's residence was a few miles from Winterset. Debord repeatedly stated to several persons that the defendant, Burch,

had nothing to do with the transaction. Defendant's brother went on Debord's bond for a time, but later withdrew therefrom, and Debord then said that, if he had to go to the penitentiary, he would take another —— —— along with him. Thereafter, he took the witness stand against this defendant. These matters last referred to are all admitted by Debord on cross-examination. After Debord took the stolen hogs to his home, he took them to Booneville, two or three days thereafter, and sold them and received the pay therefor. Defendant had directed Debord to take the hogs which defendant claims were his own, and different hogs, to Valley Junction.

Some 15 or 16 errors and points are relied upon for reversal. Appellant seems to concede that some of these, if taken separately, would not justify a reversal, but they do contend that, when they are taken all together, the defendant has not had a fair trial. We are inclined to hold, and do hold, that, under the entire record, the defendant did not have a fair trial. We have reached the conclusion that the case ought to be reversed. This being so, it will not be necessary to notice in detail all these matters, since some of them will not be likely to occur on a retrial. This has reference more particularly to the ruling on defendant's motion for continuance, the alleged misconduct in argument of the county attorney, and the like. Counsel for appellant urges that the evidence was not sufficient to sustain the verdict; that Debord, the alleged accomplice who testified for the State, was not sufficiently corroborated; that the court erred in overruling motion for directed verdict; and that there was error in the instructions and in the admission of evidence.

1. The indictment was returned October 10, 1921. The trial began December 13th thereafter, on which day the defendant filed his application for continuance. Mr. Parsons, of Des Moines, was employed immediately upon the indictment of defendant, as his principal attorney. Mr. Cooper was employed locally to assist. On Saturday, December 10th, Mr. Cooper received word from Mr. Parsons' secretary that Mr. Parsons had been called to South Carolina in the trial of a very important case in the Federal

1. CRIMINAL LAW: trial: continuance: discretion.

court, which had been pending for a long time. Mr. Cooper was unable to get into communication with defendant to inform him of the situation until December 12th, and immediately sent to Des Moines to Mr. Parsons' office to try to find some papers which he had in connection with the case. Mr. Parsons was the only attorney who had prepared the case for trial. Mr. Cooper did not expect to take charge of the defense. No question is made but that Mr. Parsons was called away, as stated. Judge Wilkinson was secured at a late hour to assist. It is but fair to say that, a week or two before, the case had been postponed a few days, to accommodate Mr. Parsons. The trial court was of opinion that, since Mr. Cooper and Judge Wilkinson were both lawyers of ability and experience, the defendant could have a fair trial. The trial court might well have continued the case, but it had a discretion in the matter, and we are not prepared to say that the case should be reversed for this alone.

2. The larceny is alleged to have occurred on a Saturday night, June 18, 1921. Debord testifies that he came from his home near Booneville on Friday night, and was at the defend-

2. CRIMINAL LAW: instructions: correct but not all-embracing.

ant's home most of the day on Saturday, and with this defendant. Five or six witnesses testify that he was not at defendant's home on Saturday at all. Other witnesses testify as to Debord's whereabouts at another place on that date. There may be other impeaching circumstances in addition to this, and his contradictory statements as to whether defendant, Burch, had anything to do with the transaction. In this situation, the trial court instructed the jury, in substance, that defendant was a competent witness, and had availed himself of the privilege of testifying, but that the jury should consider his interest, and should give his testimony such weight as the jury might think it entitled to, and no more. No instruction was given by the court in regard to the impeachment of Debord. Defendant did not ask such an instruction. The contention is that this situation tended to disparage the testimony of the defendant in comparison with that of Debord. The trial court doubtless would have given such an instruction, had it been requested. It might well have been given without a request.

3.   Certain hogs were loaded at or near defendant's place·
on Saturday night, and taken by Debord to his residence in a
truck.   Debord had stated to others that the hogs so taken were
not the stolen hogs, but were hogs which be-
longed to Burch, and which were being taken
to the other farm.   The defendant claims that
they were his own hogs.   He, his wife, and two or three others,
accompanied Debord part of the way, and helped Debord up a
hill.   Some six or seven witnesses testify that the hogs so taken
from defendant's place were all black hogs, except one white
one and perhaps one red one which concededly had been on the
defendant's Booneville farm.   There is a sharp conflict between
a number of witnesses as to the color of the hogs that were so
taken.   Early Sunday morning, after Debord and the others
had parted, four men living in Des Moines had been fishing
near by, and noticed the hogs in Debord's truck.   These men say
that the hogs were black hogs and one red hog.   These four men
were not impeached, except that they had been· fishing.   In re-
ferring to them in the closing argument, the county attorney
said :

3. CRIMINAL LAW: new trial: misconduct in argument.

"There is one thing about their case that showed they were
good soldiers : that is, when the four fishermen went on the stand
and recited their story like they had been told it the day before.
One of the bunch had spent five years learning how to be a good
soldier, and he got them in a room and drilled them and drilled
them, and then got on the witness stand and testified like a
manikin. * * * If you are going to turn men loose allowing
crooks to come out and prove an alibi, Des Moines is full of
that kind of crime.   The officers of the law are helpless if you
allow that kind of testimony to acquit men.   They tried that
over in Guthrie Center, last term of court, and let a murderer  ·
loose."

Upon objection to this kind of argument, the court said
that it might be expunged from the record.   The court did not
direct the jury not to consider the remarks nor was there any
instruction given on the subject later.   To say the least, this
comes dangerously near to being reversible error.

4.   As a part of the motion for new trial, defendant filed

affidavits as to statements alleged to have been made by one of the jurors in a crowd of threshers, which tended to show that the juror had deceived the defendant in his answers as to his qualifications, and which show that the juror was not a competent juror. The substance of the affidavits is that the matter as to the guilt or innocence of defendant and Debord was under discussion, and that the juror in question said:

"Of course they did it; we all know what kind of fellows they are; they are guilty, and they should suffer the consequences."

There is no denial of these affidavits. In the State's amended abstract, the examination of this juror on his *voir dire* is set out, wherein he said that he knew the Burches and had heard about this case; that he had formed an opinion, but had really not given the matter much thought; that the statements made by people he had talked with tallied with what he had read in the paper, from which he had formed an opinion, and still had it; that it would require some evidence to remove it; that the opinion would exist until evidence was introduced to show that it was not true, and that he would have the opinion until there was evidence enough to remove it; that he didn't believe such an opinion would influence him on the trial; and that he could lay it entirely aside. In response to questions by the court, the juror said that he thought he could go into trial, hear the evidence and instructions, and without any prejudice or bias he might have, try the case and render verdict according to the evidence, and without any reference to the opinion. The juror was challenged for cause by defendant. Overruled. This juror was called after defendant had exhausted four peremptory challenges. Thereafter, defendant exercised all his peremptory challenges, and this juror sat on the trial. We do not understand appellant to claim that this ruling of itself is reversible error. The contention is that it is a circumstance, with others, tending to show that defendant did not have a fair trial. Since there is to be a reversal on other grounds, and a new jury will be called, it is unnecessary to pursue this subject further.

5. Without repeating the evidence already referred to, and other evidence in the case, we think the evidence was such as to

take the case to the jury. Even though some of the State's witnesses were impeached, and the evidence was in conflict, the weight of the evidence and the credibility of the witnesses were for the jury.

6. As to whether, under the State's evidence, the defendant, Burch, was a principal or an accessory, and as to the alleged variance, we think the case is ruled by the recent case of *State v. Weeks*, 193 Iowa 1024.

4. INDICTMENT AND
INFORMATION:
issues, proof,
and variance;
principal and
accessory.

It is argued in this court that Section 5299 of the Code is unconstitutional. We do not find that the question was presented to the trial court or raised below. It may not be raised here for the first time. *State v. Ross*, 186 Iowa 802.

5. APPEAL AND
ERROR: reserva-
tion of grounds:
constitutional
questions.

7. The evidence tending to corroborate Debord is not very strong. It is contended by appellant that there is no corroborating evidence whatever in the record, except the evidence of footprints, to be referred to in a moment, which defendant contends was not admissible. It is contended by the State that the circumstance in regard to the loading of hogs by Debord and defendant late Saturday night, near defendant's home, if the evidence was believed by the jury, tends to corroborate Debord. At this transaction, Debord, defendant, defendant's wife, and two or three of his neighbors were present. The transaction seems to have been aboveboard. Enough has been said to indicate that it was the claim of defendant that these hogs were his own, and different colored hogs from those stolen, and that they were to be taken to defendant's farm near Booneville. Debord himself said before the trial that this was the fact. He now claims, however, that they were the same hogs that were stolen. There was a sharp conflict in the testimony between a number of witnesses as to the color of the hogs so loaded that night, and whether they were the same. One or two witnesses say that the hogs loaded were red hogs, and Debord says they were such, and that they were the hogs that were stolen; that this defendant was helping to load the hogs; that defendant in his auto, and the neighbors in their auto, followed Debord part of the

6. CRIMINAL LAW:
accomplices:
corroboration.

way, and assisted him up a hill with the load of hogs; and that defendant told Debord to sell the hogs. As said, a larger number of witnesses testifying for defendant state that the hogs loaded and transported that night were not red hogs. Notwithstanding the conflict, we think it was a question for the jury; and if the jury believed the State's witnesses, the circumstance would tend to corroborate Debord. The transaction, being late at night, and, as Debord claims, after the hogs had been stolen from Jackson and driven to within about a quarter of a mile of defendant's house, was somewhat unusual. It should be said in this connection that it is defendant's contention—and there are some circumstances tending to support it—that the hogs were not stolen Saturday night, as claimed by Debord, but that they were taken the following Tuesday night by Debord, and that defendant had nothing to do with it. Defendant also claims that, sometime Sunday morning, after defendant and the others had left Debord on the way, Debord, somewhere along the road, changed the hogs. These matters were for the jury. Appellant concedes that, if the tracks of a man's shoe testified to by Jackson were connected in such a way as to be admissible, it would be evidence of guilt, and therefore evidence tending to corroborate Debord; but, as said, the contention is that the evidence of tracks was not admissible.

8. This brings us to what we regard as the vital point in the case: whether testimony of the prosecuting witness, Tom Jackson, as to two tracks which he testifies he saw in the 20-

7. CRIMINAL LAW: evidence: competency: footprints.

foot lane, between his place, where the hogs were stolen, and a point about a quarter of a mile north of defendant's home, was properly admitted in evidence, over defendant's objection and motion to exclude. There is evidence that there were tracks of hogs from Jackson's place to the point last indicated. Debord testified that he and defendant drove the hogs south along this lane. Jackson testified that, five days after the alleged larceny, he saw two footprints in this lane. The State contends that these two tracks were made by the defendant. That evidence of tracks or footprints, if properly connected, is admissible, there is no doubt. *State v. Norman*, 135 Iowa 483. In that case, there was evidence that tracks were found on the day following the

crime, near the scene of it, and corresponding tracks in front
of a neighbor's premises. There was other evidence tending to
connect defendant with the crime by tracing him by tracks of a
spring wagon, and so on. Under the circumstances of that case,
it was held that the evidence was admissible. The general rule
is that the character of footprints found where the crime is dis-
covered, leading to or from the place of the crime, and their cor-
respondence with the feet of the accused, or with shoes worn
by him or found in his possession, are admissible in evidence to
identify him as the guilty person; but mere evidence of footprints
alone, unconnected with the defendant by means of comparison
or otherwise, is not admissible. 8 Ruling Case Law 183. A
witness may testify as to human tracks found upon the ground
at the place of the crime, and to what point they lead and the
size thereof, and he may also testify as to the size, shape, or any
peculiarity of any track or tracks that he may have seen the
accused make after the commission of the crime. Similarly, the
description and measurement of tracks at the scene of the crime
which correspond with the shoes worn by the defendant, when
introduced in evidence, are competent. But testimony as to
footprints is inadmissible where it is not shown that they cor-
responded with shoes worn by the accused at the time of the
crime, and the only fact shown which tends to connect him with
them is that they led in the direction of his home. 10 Ruling
Case Law 993. Likewise, a witness who has measured the tracks
and compared his measurements with the shoes of accused, may
testify to the results, and that a correspondence exists in size
and shape. 16 Corpus Juris 548. In *Kinnan v. State,* 86 Neb.
234 (27 L. R. A. [N. S.] 478), it was held that evidence of foot-
prints was erroneously admitted where there was no testimony
tending to show that the footprints were made by the defendant.
It was not shown that they corresponded with the shoes worn
by him, and the only fact shown was that they led in the direc-
tion of his home. See, also, *Heidelbaugh v. State,* 79 Neb. 499.
A witness may not testify that·in his opinion the tracks were
similar, where there is no showing of peculiarities in both, or
measurements of both tracks and the shoes, or who made the
tracks. *Ballenger v. State,* 63 Tex. Cr. Rep. 657 (141 S. W.
91); *Johnson v. Craig,* 172 Iowa 401; *Hodge v. State,* 97 Ala. 37

(38 Am. St. 145); *Parker v. State,* 46 Tex. Cr. Rep. 461 (80 S.
W. 1008, 108 Am. St. 1021). The question is of such importance
that we may be pardoned for carefully setting out the testimony
of Jackson, the only witness who testified to these two foot-
prints. He says:

"Tracked the hogs down the lane 80 rods; traced hog tracks
down the lane between Sections 5 and 6, 160 rods; saw the foot
tracks in that lane; first tracked the hogs Thursday morning;
did not see defendant that day; saw him Friday. The track
was going south. It was a round-pointed shoe—kind of pigeon-
toed. Saw two tracks. The shoe defendant had on, on Friday,
was a little red round-toed shoe.

"Q. Do you know whether or not he walks some pigeon-
toed? A. I would think so,—yes, a little."

Whether witness means, by the use of the word "little,"
that the track and shoe were of small size, or that they were
rounded a little, we do not know. There is evidence that the
lane was traveled considerably. The footprints are not claimed
to have been seen for four or five days after the alleged larceny.
There was no measurement of either the tracks or defendant's
shoe. The size of neither was shown, whether large or small, or
the size of defendant's shoe or feet. There were but two tracks
in a distance of about a half a mile. The tracks or footprints
were "pointed." Witness does not say that defendant's shoes
were pointed. There is no showing that the tracks and defend-
ant's shoes were of the same size. No tracks were seen of a
second man, though Debord says that he and defendant drove
the hogs down the lane. Debord does not testify that defendant
wore such shoes the night of the larceny. The only claimed
similarity or peculiarity in the tracks or defendant's shoes is
that the witness says the track was "kind of pigeon-toed," and
that he "would think defendant walks some pigeon-toed,—a
little." The footprints and defendant's shoes are not in any
manner connected, except by such alleged similarity. Many
shoes are more or less crooked, and the toes turn in a little. We
think the showing is remote, speculative, and wholly insufficient
to admit evidence as to the tracks. It should be said that, as a
part of defendant's amendment to motion for new trial, claiming
to have been taken by surprise at the evidence of the hog tracks

and the footprints, he filed his own affidavit and those of his brother, his wife, and an employee. The substance of the affidavits is that, from June 19th to Tuesday, the 21st, they were hauling hay over the lane in question, and that the wife carried water frequently in the forenoon and afternoon while the men were putting up hay; and they all say they observed no hog tracks along the lane. The amendment to the motion and the affidavits were not indorsed "filed" by the clerk, before judgment. The record is not clear; but we gather that they were not secured until late, and were deposited with the deputy clerk after the courthouse had been closed the night before.

Other questions are argued. All have been considered, but the opinion is already too long, and we would not be justified in specifically noticing them. We are of opinion that there was error in admitting evidence as to the footprints, and that it was prejudicial, and that, on the whole record, the case ought to be reversed. It is reversed, and a new trial ordered.—*Reversed.*

WEAVER, STEVENS, and DE GRAFF, JJ., concur.