MIKE TALARICO, Appellant, v. CITY OF DAVENPORT et al., Appellees.

No. 41634.

OCTOBER 25, 1932.

Glenn D. Kelly, for appellant.

John Witt and M. F. Donegan, for appellees.

KINDIG, J.—Davenport, Iowa, is a municipal corporation organized under a special charter. The defendants-appellees, George Tank, Frank Hass, and Albert Schultze, are respectively the mayor, clerk, and chairman of the license committee of that city.

During the times herein material, there were in force and effect, in the city of Davenport, ordinances providing as follows:

"Section 19: No person, firm or corporation shall by himself, clerk, agent, employee or servant, retail or sell by the drink for consumption on the premises, or adjacent thereto, in the City of Davenport, any lemonade, seltzer water, ginger ale, mineral water, small beer, cereal beverages or other beverages, not prohibited by law, nor sell at wholesale, nor deliver to others to sell at retail, any of said goods or beverages herein described, or keep open or maintain any place of public resort for the sale of any such beverages, unless such person shall have first obtained a license therefor as herein provided. Provided, however, that nothing in this section shall be construed to prohibit the sale of pop or soda water or cereal beverages by the holder of a retailer's or grocer's license by authority of said license alone whether said pop or soda water or cereal beverages be sold for consumption on the premises or otherwise.

" 'A'. Any person wishing a license under this ordinance shall present to the city clerk an application in writing therefor, containing the name of the applicant, the location of the room, house or place of business where it is proposed to carry on such business, or orders are received for the purchase and delivery of such goods at wholesale. Each application shall be endorsed by the chairman of the committee on licenses of the city council, and be accompanied by the receipt of the treasurer of the city for the sum of ten dollars,

on the presentation of which the city clerk shall issue to said person a license to sell at wholesale or retail and keep open a place of public resort for the sale of such beverages.

"Such license shall entitle the person receiving the same to sell such beverages for one year, but all such licenses shall expire on the 31st day of March following the date of their issue."

Connected with the foregoing section of the ordinance is Section I, which modifies it:

"Section I. No license hereinafter provided for shall be assignable or transferable except with the consent of the city council. The mayor may at any time forbid the issuance of a license, or if one has been issued, may revoke the same, if, in his judgment, any business, auction sale, exhibition, entertainment, occupation, or show, conducted, or to be conducted under and by virtue of said license is or will be detrimental to public health or morals or liable to lead to the violation of any ordinance or law, or provoke a breach of the peace, or if any such licensee or any of his agents shall make any false or misleading statements or representations in the furtherance of the business conducted under said license or shall violate any ordinance or law in the conduct of the business for which such license is issued. * * *

"If the mayor forbid the issuance of any license or if a license be revoked, he shall give the applicant or licensee, as the case may be, notice of his action and specify a time reasonably soon thereafter, for a hearing at which the applicant or licensee may show cause and be heard in behalf of the granting or continuance of said license."

Mike Talarico, the plaintiff-appellant, is a citizen of the United States and a resident of Davenport. As such, he, on the 4th day of June, 1932, made written application under the aforesaid ordinances of Davenport for a license to sell in that city a soft drink known as near beer. According to the admissions of the parties, the mayor, under the provisions of the ordinance set forth in the above named Section I, notified the city clerk not to issue the appellant the desired license. Therefore, the clerk refused to issue the same. When the mayor instructed the clerk not to issue the license, the former, as required by said Section I, gave the appellant, as such applicant, notice that he had forbidden the clerk to issue the license. On the same occasion and in the same notice the mayor, in accordance

with Section I, fixed the time when and place where the appellant might appear to show cause why such license should be granted him. But the appellant ignored the notice informing him of the place where and time when he could appear for such hearing, and immediately thereafter, to wit, on June 7, 1932, commenced the present action in mandamus to compel the appellees to issue the license for which application had been made. A resistance to the issuance of a temporary injunction was filed by the appellees. To this pleading the appellant replied. Later the appellees filed an answer to the appellant's petition, and again the appellant filed a reply.

Generally speaking, five issues are argued by the parties. They are: First, that the ordinance of Davenport providing for the license, above mentioned, is unconstitutional if the appellees have discretion to deny the license and prevent appellant from engaging in a legitimate business; second, that the mayor, in commanding the clerk not to issue the license, acted arbitrarily; third, that the ordinance is void because it placed in the mayor discretionary powers; fourth, that the ordinance is void for the reason that it delegated the power of the city council to the mayor; and, fifth, that Section I of the ordinance is void because it conflicts with Section 19 thereof.

These questions will now be considered in the following order.

I. Is the act constitutional under the record? The appellant asked for a license under the ordinance, but in the alternative argues that if the appellees have the discretion to deny the license, the ordinance deprives him of the right to engage in a lawful and legitimate business. This argument on appellant's part concerning the unconstitutionality of the ordinance was not raised in the district court. He did not there ask to have the ordinance declared unconstitutional, but rather, affirmed the ordinance by asking that a license be issued to him thereunder.

As before indicated, Davenport was organized and now exists under a special charter. Its special charter provides "that the city council shall have power * * * to license, tax, and regulate auctioneers, transient merchants, retailers, and grocers, taverns, ordinaries, hawkers, peddlers, brokers, pawnbrokers, and money-changers * * *." While the appellant, in his petition, claimed to be engaged in the wholesale business, yet the case was tried on a stipulation of facts wherein the parties agreed that the foregoing portion

of the city charter is applicable to the ordinances in question. Consequently, the parties by agreement have conceded that the plaintiff's business is one of the enterprises named in the charter. This being true, there is a basis in the charter, if constitutional, for the ordinance so far as it seeks to regulate the appellant's business, as defined in the agreed statement of facts.

At this juncture, it is important to understand that in Iowa there are cities under special charters and cities not under special charters. Under Section I, Article VIII, of the Iowa Constitution, special charters can no longer be granted. That does not mean, however, that the charters of municipal corporations existing at the time the present Constitution was adopted were, by such adoption, made inapplicable, null, and void. Ulbrecht v. City of Keokuk, 124 Iowa 1; Lytle v. May, 49 Iowa 224; Warren v. Henly, 31 Iowa 31. So, the city of Davenport may base its ordinances aforesaid, if they are otherwise constitutional, upon the authorization contained in its special charter. Hence, if the charter aforesaid is constitutional, it is not necessary for that city to look to the general laws relating to municipal corporations for the power to license the mercantile and other businesses named in the portions of the ordinances previously quoted. For, as before explained, the power to enact the ordinances, so far as the facts involved in this case are concerned, may be found in the charter if the same is constitutional under the issues raised in the case at bar. By so concluding, it is not determined or suggested whether the power to thus license does or does not exist under the general laws relating to municipalities. The power thus contained in the charter of Davenport was granted by the legislature at a time in the constitutional history of this state when the legislature was privileged to confer special charters on municipalities.

As said in the beginning, however, the appellant in the district court did not raise the question that the ordinance was unconstitutional if appellees have the discretion to deny him the license. Therefore, we do not consider the hypothetical constitutional question. State ex rel. Seeburger v. Johnson, 204 Iowa 150 (local citation 152); State v. Burch, 195 Iowa 427 (local citation 433); Peverill v. Board of Supervisors, 201 Iowa 1050 (local citation 1056). See State v. Altomari, 199 Iowa 43 (local citation 44). When reaching this conclusion, we do not indicate or suggest whether the city of Davenport can or cannot permanently prohibit the appellant from engaging in the mercantile business. Such ques-

tion is not involved under the pleadings and facts in this case. See, however, Manker v. Tough, 98 Pac. 792 (Kans.); City of Troy v. Harris, 76 S. W. 662 (Mo.); 17 Ruling Case Law, 525-26-27, Sec. 45. Under the present record, the city only attempted to license, regulate, and tax. Neither it nor any of its officers had finally refused to issue a license to appellant. On the other hand, as set forth in the statement of facts, the appellant was afforded a hearing on that very question, but he refused to avail himself of it.

II. Nevertheless, it is said by the appellant that the mayor, in commanding the city clerk to withhold the license, acted arbitrarily. It is to be noted in the first place that the mayor did not finally deny the issuance of the license to the appellant. His action in the premises was analogous to the issuance of a temporary order. Because of Section 19 of the ordinance, it is incumbent upon the clerk to issue a license in each instance where the fee of $10 had been paid and the proper application made, containing the endorsement of the chairman of the committee on licenses. So far as that portion of the ordinance is concerned, the machinery for obtaining a license is self-operating. Apparently, under this portion of the ordinance, the license, if the preliminary prerequisites have been met, shall be issued by the clerk automatically. According to the system of the city, it appears from the brief record presented to us that the license committee controls the issuance of licenses in all cases where the mayor does not interfere under the provisions of Section I of the ordinance.

But Section 19 of the ordinance, as before explained, is modified and controlled by Section I thereof. When, under Section I, the mayor determines that in his judgment the morals and safety of the city's inhabitants will be jeopardized by the issuance of a license, he can temporarily prevent the issuance thereof by commanding the city clerk to withhold the same. This the mayor did in the case at bar. Immediately after so doing, that official, in accordance with the ordinance, notified the appellant of the place where and the time when he might be heard upon the merits of his application. The appellant admits that this notice was duly served. For some reason the notice is not set out in the record, and it is rather difficult to determine from the record before whom the hearing was to be. A fair construction of the ordinances presented, however, indicates that the hearing was to be before the license committee or the council, which, under the ordinances and charter of

the city, has the final power in granting or refusing the license. As before stated, the appellant did not appear in accordance with the notice, but ignored his right to the hearing contemplated by the ordinance. He, on the other hand, immediately commenced an action in mandamus. Because of those circumstances, it cannot be said that the mayor acted arbitrarily. That official is endowed with a legal discretion in making the temporary order aforesaid. Although the district court, under a proper record, can hold that an official has abused his discretion and therefore acted arbitrarily, yet, as above stated, it cannot be found under this record that the mayor in question acted arbitrarily. Gundling v. City of Chicago, 177 U. S. 183; Taylor v. Smith, 124 S. E. 259 (Va.); Yee Bow v. City of Cleveland, 124 N. E. 132 (Ohio); Tighe v. Osborne, 133 A. 465 (Md.); People ex rel. Schwab v. Grant, 27 N. E. 964 (New York); Noble v. English, 183 Iowa 893; See also Cecil v. Toenjes, 210 Iowa 407; Marquis v. City of Waterloo, 210 Iowa 439; Loftus v. Department of Agriculture, 211 Iowa 566.

III. Continuing his attack upon the ordinance, the appellant declares that the same is void because it placed in the mayor discretionary powers. This question was necessarily involved in Division II above. It is legal for the legislature, or the city council in proper cases, to confer certain discretionary powers upon a mayor. Decorah v. Dunstan Brothers, 38 Iowa 96, and cases above cited. A further discussion under the circumstances is unnecessary, because to say more would only result in a repetition of the previous discussion on the same subject-matter.

IV. In the fourth place, the appellant argues that the ordinance is void for the reason that it delegated the power of the city council to the mayor. Again the appellant is mistaken. There is no attempt in the ordinance to confer the power of granting the license upon the mayor. The power to grant the license is reserved in the city council or the license committee, according to the legislative grant through the special charter. Under the ordinance, the mayor, in respect to the license, acts as an individual only in the capacity of an administrative officer. See cases cited above. At this point the thought is clearly expressed in Loftus v. Department of Agriculture (211 Iowa 566), supra, reading on page 583, in the following language:

"Discretion is frequently lodged in ministerial officers. Thus

lodging discretion does not necessarily violate any constitutional prohibition. O'Brien v. Barr, 83 Iowa 51; Brady v. Mattern, 125 Iowa 158; McSurely v. McGrew, 140 Iowa 163; State v. Mason City & F. D. R. Co., 85 Iowa 516; Hunter v. Colfax Cons. Coal Co., 175 Iowa 245. Administrative officers may, within proper limitations, exercise discretion, find facts, and exercise judgment. Hunter v. Colfax Cons. Coal Co. (175 Iowa 245), supra; 6 Ruling Case Law, 174 to 181, inclusive."

V. Finally, it is maintained by the appellant that Section I of the ordinance is in conflict with Section 19 thereof. Manifestly this position is untenable. Clearly the ordinance must be considered as a whole. When an attempt is made to interpret the municipal legislation, consideration must be given to every section thereof. Section 19 is not complete without Section I. Therefore there is no conflict between the foregoing sections of the ordinance, but rather, the one is in harmony with the other. In fact, the ordinance does not exist without Section 19 as modified by Section I.

To determine what the ordinances of Davenport mean, then, it is necessary to consider Sections 19 and I together. It was not intended by the city of Davenport that Section 19 should exist except as it is modified by Section I. There is no conflict between them, but rather, the one supplements and modifies the other.

Wherefore, the judgment and decree of the district court should be, and hereby is, affirmed.—Affirmed.

STEVENS, C. J., and EVANS, FAVILLE, ALBERT, and BLISS, JJ., concur.