A. H. BERNSTEIN, Appellee, v. CITY OF MARSHALLTOWN et al., Appellants.

No. 41165.

APRIL 4, 1933.

R. A. Rockhill, for appellants.

A. B. Hoover, for appellee.

KINDIG, C. J.—The defendant-appellant, city of Marshalltown, is a municipal corporation organized under the laws of Iowa, and the other defendants-appellants are, respectively, the mayor, clerk, and members of the council of said city.

For some years, the plaintiff-appellee, A. H. Bernstein, has been a resident of the city of Marshalltown. He there operates a wholesale and retail newspaper and magazine business. In conjunction with that business, the appellee desired to sell cigarettes and cigarette papers. Accordingly, on January 12, 1931, he filed with the city clerk of Marshalltown his application for a permit to sell cigarettes and cigarette papers, in an attempt to comply with section 1557 of the 1931 Code. That section provides:

"No person shall sell cigarettes or cigarette papers without first having obtained a permit therefor in the manner provided by this chapter [chapter 78 of the 1931 Code, section 1552 et seq.]. Such permit may be granted by resolution of the council of any city or town under any form of government and when so granted, may be issued by the clerk of such city or town. If issued to a person for use outside of a city or town such permit may be granted by resolution of the board of supervisors and when so granted shall be issued by the auditor of the county. Such permit shall remain in force and effect for two years following the July first after its issuance, unless sooner revoked."

Immediately following the foregoing section of the statute is section 1558, which reads:

"Such permit shall:

"1. Be granted only to a person owning or operating the place from which sales are to be made under the permit.

"2. Not be transferable.

"3. Be numbered and show the name and the residence of the person to whom granted and the place of business of the holder where sales are to be conducted under said permit."

When the appellee submitted his application for the permit to the city council of Marshalltown, it was rejected. Consequently

the appellee, on January 17, 1931, instituted the present proceedings for a· writ of mandamus to compel the city of Marshalltown, its clerk and council, to issue the permit.

In response to the appellee's petition, the appellants answered, and the cause was tried in the district court. As a result of that trial, the writ of mandamus was issued, requiring the city of Marshalltown, its clerk and council, to grant the appellee the permit. From the judgment thus entered, the appellants appeal.

■ I. It is argued by the appellee that permits to sell cigarettes and cigarette papers had been granted by the appellants, under section 1557 of the 1931 Code, to other persons in Marshalltown. These permits, the appellee declares, are in full force and effect, and are being used by the respective permittees. Such was the situation, the appellee says, when he made the application for the aforesaid permit. So the appellee concludes that the city of Marshalltown, having elected to permit the sale of cigarettes and cigarette papers within its jurisdiction, must thereafter issue permits to anyone applying therefor.

On the other hand, it is argued by the appellants that the fact that permits to sell cigarettes and cigarette papers may have been issued to others is no criterion for the proposition that a similar permit must be issued to the appellee. Under the sections of the Code involved, there is contemplated an independent action of the city council in issuing a permit to each separate applicant. There is nothing in the legislation to indicate a general action by the city council in the nature of a blanket resolution to cover every application presented then and in the future, regardless of the circumstances surrounding each applicant. According to the statute "no person shall sell cigarettes or cigarette papers without first having obtained a permit therefor in the manner provided by this chapter." Clearly there is not a hint in the statute that a general resolution by the city council shall apply to all applicants, regardless of the individual merits of each. When an individual application for a permit has been granted, the fact must, under section 1560 of the same chapter, in each case be certified to the treasurer of state.

The whole history, theory, and purpose of the statute indicates that each individual application is to be considered on its merits. Taking into consideration, as we must, the history, theory, and purpose of the statute, it is plain to see that the permit is a trust granted by the proper local authority. It is a trust to do, under certain

limitations, a thing otherwise forbidden by law. A permit, there-fore, renders the holder immune from prosecution for that which, but for the permit, would be a public offense.

Our legislature, acting under the police power of this state, declared the sale of cigarettes and cigarette papers objectionable and against the public policy of this state. Such declaration of the legis-lature is still in effect. Section 1557, above quoted, therefore, is distinctly and essentially a police regulation. By the very terms of the statute, the duty is imposed upon the city council (or board of supervisors) to determine who *may* be thus rendered immune from criminal prosecution. Evidently the legislature used the word "may" advisedly and intentionally. As said in Kelley v. City of Cedar Falls, 123 Iowa 660, reading on page 661, 99 N. W. 556, 557:

"The primary or ordinary meaning of the word 'may' is un-doubtedly permissive and discretionary. Century Dictionary. And in a statute or ordinance it can be construed in a mandatory sense only 'when such construction is necessary to give effect to the clear policy and intention of the legislature; and where there is nothing in the connection of the language or in the sense or policy of the provision to require an unusual interpretation, its use is merely permissive and discretionary.' 20 Am. & Eng. Enc. of Law (2d Ed.) 237; Downing v. City of Oskaloosa, 86 Iowa 352, 53 N. W. 256; Bouvier's Law Dict. 218."

The following cases sustain the rule announced in Kelley v. City of Cedar Falls, above quoted: Queeny v. Higgins, 136 Iowa 573, local citation 574, 114 N. W. 51; Downing v. City of Oska-loosa, 86 Iowa 352, 53 N. W. 256; Lyons v. Gram, Commissioner of Labor Statistics, etc., 122 Or. 684, 260 P. 220; Doben v. Board of Health of City of Paterson, 127 A. 38, 3 N. J. Misc. 38; Samuels v. Couzens, Mayor, 215 Mich. 328, 183 N. W. 925; People ex rel. Dorr v. Thacher, 42 Hun, 349 (N. Y. 1886).

There is nothing in the purpose or context of the statutes under consideration to indicate that the legislature intended the word "may" to mean "shall" or "must". The necessity for giving the word "may" such an extraordinary or unusual meaning is not present. On the contrary, there is every indication in the context of the statutes, and in the purpose and history thereof, that the legis-lature intended "may" to express, as it generally and ordinarily

does, the thought of discretion. This conclusion is supported by the following, as well as by the foregoing, considerations.

When acting in the premises, the legislature was dealing with police regulation of cigarettes and cigarette papers, the sale of which under the public policy of the state, as declared by the legislature, is considered illegal and dangerous to the public health and morals. So, when the appellee made application for a permit, he was not demanding an absolute right, but rather asking for a privilege as a matter of grace. State v. Nossaman, 107 Kan. 715, 193 P. 347, 20 A. L. R. 921; West v. Bishop, Judge, 110 Iowa 410, 81 N. W. 696.

"The power given to a municipality to license and regulate an occupation or privilege imposes no obligation on it to grant any licenses; but includes the power to refuse a license in a particular case, even where the statutory or preliminary requirements are complied with." 37 Corpus Juris 182, section 28. See, also, section 29.

For supporting authorities, see 37 Corpus Juris 187, 188, section 37; 37 Corpus Juris 240, section 97; 15 Ruling Case Law 306, section 63; State ex rel. and to Use of Oetker v. Johnson et al., Judges (Mo. App.) 211 S. W. 682; Noble v. English, 183 Iowa 893, 167 N. W. 629; Cecil v. Toenjes, 210 Iowa 407, 228 N. W. 874; Marquis v. City of Waterloo, 210 Iowa 439, 228 N. W. 870; Talarico v. City of Davenport, 215 Iowa 186, 244 N. W. 750; Gundling v. City of Chicago, 177 U. S. 183, 20 S. Ct. 633, 44 L. Ed. 725; Taylor v. Smith, 140 Va. 217, 124 S. E. 259; Yee Bow v. City of Cleveland, 99 Ohio St. 269, 124 N. E. 132, 12 A. L. R. 1424; Tighe v. Osborne, 150 Md. 452, 133 A. 465, 46 A. L. R. 80; Burgess et al. v. Mayor and Aldermen of the City of Brockton, 235 Mass. 95, 126 N. E. 456; State ex rel. Labovich et al. v. Redington, City Clerk, 119 Minn. 402, 138 N. W. 430; People ex rel. Schwab v. Grant, Mayor, 126 N. Y. 473, 27 N. E. 964; Austin v. State, 101 Tenn. 563, 48 S. W. 305, 50 L. R. A. 478, 70 Am. St. Rep. 703; State v. Packer Corporation, 77 Utah 500, 297 P. 1013; Adams v. Stephens, Clerk, 88 Ky. 443, 11 S. W. 427; State v. Thompson, 160 Mo. 333, 60 S. W. 1077, 54 L. R. A. 950, 83 Am. St. Rep. 468; State ex rel. Smith v. Town of Ravenswood, 104 W. Va. 614, 140 S. E. 680; Thorpe v. Mayor & Aldermen of the City of Savannah, 13 Ga. App. 767, 79 S. E. 949; State ex rel. Brown v. Stiff, Mayor, 104 Mo. App. 685, 78 S. W. 675 (Court of Appeals at Kansas City, Mo.); State ex rel. Crumpton

v. Montgomery et al., 177 Ala. 212, 59 So. 294; Columbus City v. Cutcomp, 61 Iowa 672, 17 N. W. 47; State v. United States Express Co., 164 Iowa 112, local citation 137, 145 N. W. 451. See City of Burlington v. Bumgardner, 42 Iowa 673; Council of Montgomery v. Kelly, 142 Ala. 552, 38 So. 67, 70 L. R. A. 209, 110 Am. St. Rep. 43; Burlington & Henderson County Ferry Co. v. Davis, 48 Iowa 133, 30 Am. Rep. 390.

As said in People ex rel. Schwab v. Grant, Mayor (126 N. Y. 473, 27 N. E. 964), reading on page 967, supra:

"A power to grant a privilege by one is inconsistent with the possession on the part of another of an absolute right to exercise such privilege. The requirement that a person must secure leave from some one to entitle him to exercise a right, carries with it, by irresistible implication, a discretion on the part of the other to refuse to grant it, if, in his judgment, it is improper or unwise to give the required consent."

The above and foregoing cases include discussions of applications to sell cigarettes and many other analogous articles of merchandise as well. Likewise, those cases discuss applications to engage in various occupations.

A distinction may be found in the books between an application to do a thing which is prohibited by the police power and an application under a general power to license, regulate, and tax useful occupations and privileges. 27 Corpus Juris 183, section 29.

Evidently, therefore, because of all the reasons above suggested, the legislature advisedly used the word "may", and clearly intended that the city council should have a discretion to grant or deny the application for a permit to sell cigarettes. Under the legislation, the local authorities are burdened with a great responsibility. It is that of granting immunity to persons who otherwise would be guilty of a public offense. Such responsibility under the statute involves more than merely ascertaining whether or not the applicant "owns or operates the place" where the cigarettes are to be sold. See section 1558, supra. According to the legislation, a permit, when once issued, remains in force and effect for the period of two years following July 1 after its issuance. If the appellee is right in his contention, then, after said council once decides to issue permits to sell cigarettes and cigarette papers, that council and all succeeding councils must grant every application for such permit.

Then, by electing to grant cigarette licenses, a current city council would bind itself as well as future city councils to issue such licenses regardless of the fitness of the applicant to receive the same. A future council, under the facts contemplated, would be helpless to limit the number of permits or to refuse to renew permits already issued, even though such future council unanimously felt that there should be no permits in the municipality.

The law certainly does not contemplate that one city council can thus bind future city councils for all time in a matter of this character. Manifestly, the statute was intended to make the granting of a permit a personal and individual matter between the particular applicant and the city council to whom the application is addressed. When the application is thus made, the city council *may*, under the statute, grant or refuse a license according to its discretion.

Section 12441 of the 1931 Code provides:

"Where discretion is left to the inferior tribunal or person, the mandamus can only compel it to act, but cannot control such discretion."

As before explained, the city council in the case at bar acted on the appellee's application for the permit to sell cigarettes and cigarette papers. It refused to grant the permit. Consequently the discretion of the city council in that regard cannot be controlled by mandamus. Cecil v. Toenjes (210 Iowa 407), supra, local citation 414, 228 N. W. 874; Sweitzer v. Fisher, 172 Iowa 266, local citation 272, 154 N. W. 465, L. R. A. 1916B, 611; Federal Contracting Co. v. Webster County, 153 Iowa 362, local citation 367, 133 N. W. 765.

II. But it is said by the appellee that the action of the city council in the premises is arbitrary and capricious, and therefore the general rule above announced does not apply. There are circumstances under which it has been held that a city council or similar body may not unlawfully discriminate or act in a purely arbitrary and capricious manner.

Under such circumstances, it has been declared that mandamus will lie to compel the city council, or other body, to grant that to which an applicant is entitled because the refusal of such body was arbitrary, capricious, and illegal. For cases supporting this doctrine, see Bear v. Cedar Rapids, 147 Iowa 341, 126 N. W. 324, 27 L. R. A.

(N. S.) 1150; 15 R. C. L. 306; 37 Corpus Juris 240; 18 R. C. L. 293; 15 R. C. L. 309; 38 Corpus Juris 743; State v. Clendenin, 92 W. Va. 618, 115 S. E. 583, 29 A. L. R. 37; Jackman v. Public Service Commission, 121 Kan. 141, 245 P. 1047; Bleuel v. Oakland, 87 Cal. App. 594, 262 P. 477; Larkin v. Schwab, 242 N. Y. 330, 151 N. E. 637. See, also, State of Iowa ex rel. Fletcher, Attorney General, v. District Court of Jefferson County et al., 213 Iowa 822, 238 N. W. 290, 80 A. L. R. 339.

On the other hand, it is urged by the appellants that the doctrine under the exception to the general rule applies only to occupations that are useful, as distinguished from occupations that are recognized as not being useful, and therefore are prohibited under the police power and merely tolerated only to a limited extent. See 37 Corpus Juris 183, section 29. Because of the facts presented in the case at bar, it is unnecessary to decide, and therefore it is not decided, whether the Marshalltown city council has an absolute right to discriminate or act arbitrarily in refusing to grant to the appellee his application for a permit to sell cigarettes. This is true because under the facts here presented the city council acted clearly within a legal discretion when refusing the permit. When the city council acted upon the appellee's application, there was evidence before it that the applicant had conducted an immoral place. He had been arrested for keeping, exhibiting, and selling obscene and lewd magazines.

Apparently the charge was not pressed, but the officers raided the appellee's place of business and there found lewd magazines, "foul trinkets", and "cow itch or itch powders".

Young people frequented the appellee's place of business. The appellee kept in the counters of his place of business iron mechanical dogs which would perform vulgar and foul tricks. According to the record, school boys purchased at the appellee's place of business itch powders which caused the boys who took physical exercise in the gymnasiums of the public schools annoyance and physical discomfort. Officers testifying for the appellants declared that they found immoral and licentious magazines in appellee's establishment. If cigarettes and cigarette papers were offered for sale by the appellee, many young people would visit his place of business to make purchases. While there, they would be surrounded by the immoral conditions above described. These facts clearly indicate that the appellants acted within a sound legal discretion when deny-

ing the appellee's application for the permit. See Harry Gundling v. City of Chicago, 177 U. S. 183, 20 S. Ct. 633, 44 L. Ed. 725.

Obviously the appellants did not act arbitrarily or capriciously in refusing to make the appellee a trustee to sell that which, without the permit, is a public offense.

Wherefore, the judgment of the district court must be, and hereby is, reversed.—Reversed.

EVANS, STEVENS, ANDERSON, DONEGAN, and MITCHELL, JJ., concur.

UTTERBACK, KINTZINGER, and ALBERT, JJ., dissent.

UTTERBACK, J. (dissenting)—Being unable to agree with the conclusion reached by the majority, I respectfully dissent.

This is an action in mandamus to compel the city council of the city of Marshalltown to grant a permit to appellee to sell cigarettes within said city. The appellee made application for permit to the city council on December 8, 1930. The application was rejected. On January 13, 1931, the appellee presented a second application. This application was likewise rejected on January 26, 1931. Thereafter this action was instituted.

It appears from the record that thirty-three permits had been granted to sell cigarettes by the city council of the city of Marshalltown. Only two applications had been rejected, to wit, one by the A. & P. store, and this application by the appellee. The appellee had been a resident of the city of Marshalltown for some years, during which time he had been engaged in the wholesale and retail sale of magazines and newspapers.

It is conceded that the application was in due form, and that all the requirements of section 1558 of the Code were fully complied with. The moral issue was raised against the appellee in this case, it being contended that he was not a proper person to hold a permit.

The record in this case shows that some time prior to the filing of the application for permit by the appellee, his place of business was raided by police officers, at which time a quantity of alleged obscene magazines and some articles of personal property, including "itch powder" and other articles, were seized. A criminal charge was filed against the appellee in the municipal court of the city of Marshalltown. This charge was a few days later dismissed by the

court on the recommendation of the county attorney of Marshall county. The application for permit was not filed until some time after the charges had been dismissed.

The reason why the application of the appellee for permit was denied is clearly shown by the testimony of the members of the appellant city council upon the trial of this case. Four members of the city council were witnesses. The two other members of the city council, to wit, Mr. Nyce and Mr. Leaf, were not present to testify. It was stipulated and agreed that, if they were present, they would testify to substantially the same things that had been testified to by Mr. Peat and Mr. Jennings, also members of the city council.

One of the members of the city council, Mr. Treat, testified as follows:

"The reason I had was that I felt the man wasn't worthy to have it. My opinion was based upon the recollection brought out in connection with the magazines and other articles being kept there contrary to law. The only other information I had was a little hearsay from the police department. * * *

"The articles I refer to as being kept contrary to law were those mentioned in the article in the paper. I do not personally know that the articles were kept contrary to law. I made no investigation."

On cross-examination, the witness was asked: "And as a general rule it is just arbitrary with the Councilman, whether he wants to vote for it or not, isn't it?"

To which the witness answered: "That is right. The Councilman has to use his own judgment."

Another member of the city council, Mr. Nicholson, testified that Mr. Treat had practically stated his reasons for voting against the permit. He said: "I will tell it in my way. You can pull a nail but you can't get rid of the hole. Mr. Bernstein was arrested for this, I suppose, and the Court dismissed the case, but it left the hole there just the same in my mind. * * * I knew after the first application was rejected that the charges against Mr. Bernstein were dismissed. In a sense I still exercised my right to consider him guilty."

Another member of the city council, Mr. Peak, testified as follows: "I talked to the members of the Council more or less collectively. No specific reason for refusing the permit was talked over

except that this particular applicant was in trouble on account of selling cow itch and some articles and publications that had been censored for being sold in the city. * * * Each councilman voted his own will. There was no fixed rule for acting on these permits and no understanding by the Council to reject certain applications and grant others."

Another member of the city council, Mr. Jennings, testified as follows: "I am a member of the school board. Before this raid information came to me that school children were having obscene literature and what they call cow itch. That some of the boys had had it put in their athletic uniforms and had complained about it. I spoke to Mr. Akers about it. A short time after that the raid had taken place. * * * I understood that they admitted the obscene literature. Also that the criminal charges against Mr. Bernstein were dismissed."

Further testifying, Mr. Jennings said: "In these proceedings there was no concerted action of the council on the matter. I simply voted my individual will on the matter. My action was based on the moral reason, and I felt that he might sell cigarettes to minors if granted a permit."

The trial court filed a written opinion in the case, in which is found the following statement:

"The court has examined the Exhibits seized under the search warrant, and which formed the bases for the charge which was filed against this plaintiff, which charge was dismissed as above stated, and can understand the wisdom and propriety of the County Attorney in moving dismissal of the charge against A. H. Bernstein. So far as these Exhibits shown to be the property of the plaintiff are concerned, it cannot be said that this plaintiff was violating the law in selling or offering for sale said Exhibits. Neither, in the opinion of the court, are these Exhibits particularly offensive, but are such as are well known to be on display and for sale in other reputable places of business in Marshalltown and other cities. From the Court's observation of the witnesses it was apparent that on the part of some of them there was a decided hostility to the plaintiff, and yet the only reason that they have for the refusal of the permit was based upon the knowledge of the fact that the plaintiff's place of business had been searched and that he had been arrested."

The trial court further said in its opinion:

"In examining the whole of chapter 78 of the Code of 1927 no requirement is made as to moral character, habits or the nature of the business of any applicant for a permit, except that he must be the owner or operator of the business where sales are to be made, and that a permit holder whose permit has been revoked by the conviction of a violation of any provision of chapter 78 shall not be granted a permit for two years from the date of the revocation."

The court further states in said opinion:

"Undoubtedly, upon the filing of the plaintiff's application for a permit this Chapter contemplated that the City Council should see that the above requirements of the law were complied with, and also ascertain whether a permit to sell cigarettes held by this applicant had been revoked within a period of two years prior to his application. In no place in this Chapter is it made the duty of the City Council to make any further or additional investigation before issuing a permit. The applicant is nowhere required to be of good moral character or to have any qualification except to be the owner or operator of the business. The Court is of the opinion that in view of the whole of chapter 78 it was not the intention of the State Legislature to vest in the City Council any discretion, but that a ministerial duty is prescribed for the City Council as an agency for aiding and assisting the putting in force and operation of a state law designed for the purpose of raising revenue."

The questions here presented are, *First:* whether or not the city council had any discretion whatever in their action on the appellee's application for permit to sell cigarettes in Marshalltown? and, *second:* if such discretion existed, what are its limits?

The Code sections applicable to this case are sections 1557, 1558, 1559, 1563, and 1570, all being in said chapter 78 of the 1931 Code.

Code section 1557 provides the following:

"Permit to sell. No person shall sell cigarettes or cigarette papers without first having obtained a permit therefor in the manner provided by this chapter. Such permit may be granted by resolution of the council of any city or town under any form of government and when so granted, may be issued by the clerk of such city or town. * * *"

Code section 1558 is as follows:

"Form of Permit. Such permit shall:

1. Be granted only to a person owning or operating the place from which sales are to be made under the permit.

2. Not be transferable.

3. Be numbered and show the name and the residence of the person to whom granted and the place of business of the holder where sales are to be conducted under said permit."

Code section 1559 provides for the revocation of "the permit of any person who has been convicted of violating any of the provisions of this chapter."

Code section 1563 provides for the payment of a mulct tax by permit holders, and Code section 1570 provides for the payment of stamp tax upon all cigarettes, cigarette papers, wrappers, and tubes sold.

A review of past legislation in Iowa on the subject of cigarettes shows that the sale of cigarettes was formerly prohibited in the state of Iowa. The present law, however, legalizes the sale of cigarettes by those to whom permits have been granted, under the conditions prescribed by chapter 78 of the 1931 Code of Iowa. In other words, the sale of cigarettes is still prohibited, unless a permit authorizing the sale is procured in the manner provided for in said chapter 78.

It being conceded that the appellee complied with all the requirements of the statute as to his application, the question here to be determined is: Can the city council of Marshalltown refuse to grant a permit to the appellee when he has complied with all the statutory conditions precedent? In other words, does the appellant, city council, have discretion, under the facts and circumstances above set out, to refuse appellee's application for permit to sell cigarettes in Marshalltown?

This case requires an interpretation of section 1557 of the statute. The appellants insist that the use of the word "may" in the above section, wherein it provides that such permits "may" be granted by resolution of the city council, gives to such council an absolute discretion to say whether or not the appellee shall be granted such permit. With this contention I cannot agree; it being my opinion that the city council must treat all alike who comply with the conditions precedent set out in the statute, and that it

cannot discriminate in favor of nor against any who fully comply therewith.

It seems clearly apparent that the purpose of the legislature in the enactment of said chapter 78 was to give to each municipality designated in the statute the right or discretion to determine whether or not cigarettes might be sold within its boundaries. It is a purely local option statute in that respect, and the use of the said word "may" in section 1557 shows clearly the intention of the legislature. In other words, each municipality, by the statute, is given the right to determine for itself whether or not cigarettes may be sold within its boundaries.

Then, immediately following said section 1557, the statute proceeds to set out in detail certain requirements and conditions precedent to the issuance of the permit. It, therefore, follows that it was the intention of the legislature that, when the city council has determined, in the exercise of the discretion granted in section 1557, that cigarettes may be sold within its boundaries, every applicant for a permit, who complies with the requirements and conditions precedent set out in the statute, is entitled to a permit.

Let us next turn, therefore, to the other sections of the chapter, to see whether or not the appellee has the qualifications required, and whether he has performed the conditions precedent and complied with the requirements set out in the statute.

A careful study of said chapter 78 shows that Code section 1558 is the section that relates to the qualifications of the permit holder. It provides that the applicant must be "a person owning or operating the place from which sales are to be made under the permit." At this point under the statute it becomes the duty of the city council to determine whether or not the applicant owns the place of business in which the sale is to be made. If the applicant possesses the qualifications of owning and operating the place from which the sales are to be made, and has furnished the required bond and performed the conditions precedent provided in the statute, then there is nothing left for the city council to do but to perform the ministerial duty of granting the permit. Under these statutes, the city council has no discretion at this point in the matter of giving or refusing the permit, except in the event that the applicant is not a person owning or operating a place from which sales are to be made.

It must be remembered that the city council possesses only

such powers as are conferred upon them by the legislature. It would seem that the only discretion conferred by the legislature on the city council is the power to determine in the first instance whether cigarettes may or may not be sold within the boundaries of the city. The city council in this case having determined that question in the affirmative, it follows that every person possessing the qualifications set out in section 1558, on making proper application therefor, and otherwise fully complying with the statute, is entitled to a permit.

The question here presented is not whether the city council can prohibit the sale of cigarettes entirely, but whether it can grant permits to some and refuse permits to others similarly situated, when the one refused, under the statute, has complied with all of the conditions required by the statutes. It is fundamental that the power conferred by the legislature upon the city council imposes upon it the corresponding duty to exercise this power in obedience to the terms and conditions therein provided, without discrimination, and that, in cases of this kind, all persons similarly situated must be treated with equality. To grant a permit to one and to refuse it to another who has conformed with all of the statutory conditions is clearly arbitrary and discriminatory.

Upon the whole record in this case, it clearly appears that the city council discriminated against the appellee and in favor of thirty-three others to which permits were granted. It also appears clearly that the refusal to grant the permit to appellee herein was based largely, if not entirely, upon the fact that a criminal charge had been filed against him, when the record shows that the case had been dismissed by the court. Furthermore, there is no provision or requirement in the statute either as to the moral character of the applicant or as to the kind and nature of the business to be conducted where the sales are to be made; the only statutory requirement being that the applicant must be the owner and operator of the business where the sales are to be made.

The action of the appellant city council in refusing to grant permit to the appellee was discriminatory and an attempt to exercise a discretion not conferred by the statute. It was the duty of the city council to grant the permit to the appellee.

The denial of the permit to the appellee in this case being unlawful, the same should be corrected by mandamus.

I realize that, under this interpretation of the statute, the city council may some time be required to grant a permit to a person who on moral grounds it would prefer to refuse. This, however, is not an argument that the court should recognize, or a wrong that the court can remedy. For protection against such situations, the people must resort to the polls and the legislature, and not to the courts. The holding of the majority opinion herein is the equivalent of a legislative amendment to the statute.

· Having reached the conclusions above set out, I would hold that the action of the city council in refusing to grant the permit to the appellee was unlawful, that the permit should have been granted to the appellee, and that the judgment of the trial court should be affirmed.

ALBERT and KINTZINGER, JJ., also dissent.